THE STATE, EX REL. BOARD OF EDUCATION OF BRATENAHL
LOCAL SCHOOL DISTRICT, APPELLEE, *v.* STATE BOARD OF
EDUCATION ET AL., APPELLANTS.
BOARD OF EDUCATION, BRATENAHL LOCAL SCHOOL DISTRICT,
APPELLEE, *v.* STATE BOARD OF EDUCATION ET AL.,
APPELLANTS.

[Cite as State, ex rel. Bd. of Edn., v. State Bd. of Edn.
(1978), 53 Ohio St. 2d 173.]

(Nos. 77-171 and 77-172—Decided March 22, 1978.)

Messrs. *Chester, Hoffman, Park, Willcox & Rose,* Mr. *John J. Chester,* Messrs. *Arter & Hadden* and Mr. *William S. Burton,* for appellee.

Messrs. *Alexander, Ebinger, Holschuh, Fisher & McAlister* and Mr. *John D. Holschuh,* for appellants.

SWEENEY, J. The central issue in this cause is whether, in the first instance, Bratenahl could appeal the decision of the state board rendered in 1970, wherein the board denied Bratenahl's request for an additional exception.[1] The Court of Appeals has held in effect throughout the lengthy dispute that Bratenahl had the right under R. C. 119.12 to bring an appeal to the Court of Common Pleas challenging the state board's action of refusing to grant the district an additional exception. We disagree.

---

[1] Irrespective of the fact that this issue was decided by the Court of Appeals in a prior decision in which this court denied certification of the record, this court is not precluded from reviewing the issue. Paragraph two of the syllabus in *Pengelly* v. *Thomas* (1949), 151 Ohio St. 51.

Before an appeal can successfully be brought to the Court of Common Pleas of Franklin County under the provisions of R. C. Chapter 119, the proceedings of the administrative agency must have been quasi-judicial in nature. Section 4(B), Article IV of the Ohio Constitution; paragraph one of the syllabus in *Fortner* v. *Thomas* (1970), 22 Ohio St. 2d 13. In employing the term "quasi-judicial," this court held in paragraph two of the syllabus in *M. J. Kelley Co.* v. *Cleveland* (1972), 32 Ohio St. 2d 150, that:

"Proceedings of administrative officers and agencies are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence."

Under R. C. 3301.13, it is provided that:

" * * * In the exercise of any of its functions or powers, including the power to make rules and regulations and to prescribe minimum standards the department of education, and any officer or agency therein, shall be subject to Chapter 119 of the Revised Code."

Thus, this court is confronted with the issue of whether Bratenahl was entitled to notice and a hearing before the state board under the provisions of R. C. Chapter 119 on the matter of whether the Bratenahl Local School District was entitled to an additional exception under the provisions of R. C. 3311.29 in 1970.

R. C. 119.06 requires that "[n]o adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with section 119.01 to 119.13, inclusive * * *." "Adjudication" is defined under R. C. 119.01 (D) as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person,[2] but does not include the issuance of a license in response to an ap-

---

[2]The term "person," defined under R. C. 119.01(F), includes a "person, firm, corporation, association, or partnership." The court does not reach the issue of whether a local board of education is a "person" within the meaning of this section. See *State, ex rel. Osborn,* v. *Jackson* (1976), 46 Ohio St. 2d 41, 46-50.

plication with respect to which no question is raised, nor other acts of a ministerial nature.''

In construing the above statutory provisions together, it is evident that before an order based on an ''adjudication'' may be issued by the state board, the board must first provide notice and a hearing. Alternatively, if the order is not based on an ''adjudication,'' it is immaterial that the state board does not furnish parties an opportunity to be heard, since the order, so long as it is authorized by law, is still valid.

In the instant cause, the state board did not provide Bratenahl with notice and an opportunity to be heard before refusing to grant the Bratenahl Local School District an additional exception from the requirements of R. C. 3311.29. However, as this court noted in construing language found in R. C. 2506.01 (the counterpart to the judicial review provisions of R. C. Chapter 119 for administrative units of the various political subdivisions in this state) similar to that found in R. C. 119.01(D), ''* * * a refusal to act does not determine any rights, duties, privileges, benefits, or legal relationships * * *'' of a complaining party. *State, ex rel. Benton's Village Service,* v. *Usher* (1973), 34 Ohio St. 2d 59, 61. Absent such a determination, there cannot be an ''adjudication.'' Clearly the act of refusing to change one's position is not equivalent to the act of deciding in the first instance which position to take among several alternatives. The ''rights,'' ''privileges,'' and ''benefits'' of the Bratenahl Local School District to remain in existence after July 1, 1968, were determined by the state board in its resolution dated June 10, 1968, and were not in some way resurrected or placed back into issue upon the subsequent request of appellee in 1970 for an additional exception.

Because the refusal to grant the Bratenahl Local School District an additional exception under R. C. 3311.-29 was not an ''adjudication'' within the meaning of R. C. 119.01(D), the state board's action was valid, despite the fact there was no notice or opportunity to be heard afforded Bratenahl. Absent the rights to notice and a hear-

ing, the refusal of the state board to postpone the pre-determined date of dissolution of the Bratenahl Local Schools was not quasi-judicial in nature. *Kelley, supra;* see, also, *Haught* v. *Dayton* (1973), 34 Ohio St. 2d 32, 35. Consequently, there was no right of appeal under R. C. 119.12 (*Fortner, supra*) and the Court of Common Pleas correctly dismissed Bratenahl's cause of action. This court concludes that the Bratenahl Local School District was properly dissolved on July 1, 1970, by the state board.

Because the judgments of the Court of Appeals in cases Nos. 77-171 and 77-172 are based on that court's initial erroneous determination that the state board's 1970 refusal was a reviewable order, they are necessarily reversed.

*Judgment reversed in case No. 77-171.*
*Judgment reversed in case No. 77-172.*

O'NEILL, C. J., HERBERT and W. BROWN, JJ., concur.
CELEBREZZE, P. BROWN and LOCHER, JJ., dissent.

CELEBREZZE and LOCHER, JJ., dissenting. We must respectfully dissent from the majority opinion in view of its egregious result and the tenuous legal reasoning advanced as necessitating said result. The record portrays a conflict of over nine years, during which time Bratenahl has striven to maintain its local school district against a steadfast state board's repeated attempts to dissolve and merge the district with a large neighboring district.

Over this period of time the residents of Bratenahl have aptly manifested their genuine concern for the preservation of their local district. Bratenahl, confronted by noncompliance with R. C. 3311.29 (which requires that no school district shall exist after July 1, 1968, which does not maintain public schools consisting of grades 1 through 12), sought an exception, on June 8, 1968, from compliance as provided for in that statute. The state board found a two-year extension to be desirable in view of the overcrowded

conditions of neighboring Cleveland school district facilities. It should be noted that, prior to July 1, 1968, a Department of Education regulation required a minimum of 240 students for the establishment of a new high school. Thus, Bratenahl was foreclosed from attempting to comply with the legislative mandate of R. C. 3311.29 at the time it requested the two-year exception. Thereafter, the 240 student standard was replaced with the requirement of offering 55 units of credit and thus theoretically Bratenahl could operate a high school after July 1, 1968.

Upon ascertainment of the change in the standard, Bratenahl commenced efforts to establish a high school. Stanton Leggett & Associates was retained to conduct a feasibility study and develop plans for a high school. Apparently, the study indicated a 15-month period would be necessary for establishment of a viable high school program. Bratenahl therefore requested the state board to grant a further exception from the effect of R. C. 3311.29.

On February 9, 1970, without having afforded Bratenahl notice or a hearing, the state board, through formal order, summarily denied Bratenahl's request. After lengthy adjudication, the Court of Common Pleas of Franklin County entered a judgment, on August 24, 1973, vacating the order of the state board denying Bratenahl's request for an extended exception. In addition, on August 30, 1973, the Court of Common Pleas entered a declaratory judgment expressly finding Bratenahl to be a legally existing school district and entitled to an R. C. Chapter 119 hearing on its request for an extended exception.

During this tumultuous period, Bratenahl obtained a stay of execution from the state board's denial order and then proceeded to turn a theoretical possibility into a reality. Upon the refusal by the Ohio Department of Education to render technical and professional assistance, Bratenahl engaged the assistance of the School of Education of the University of Akron. In this manner Bratenahl developed its own high school educational program. Hiring the necessary instructors and administrators, Bratenahl

opened its high school in September of 1971, temporarily utilizing an abandoned Nike missile base for its physical facilities. During a lull in this litigious marathon, Bratenahl residents voted approval of a bond issue and additional operating funds, and since September 1975 a newly constructed, specially designed, centrally located high school has been operational within the local school district.

On November 15, 1973, an R. C. Chapter 119 hearing was finally convened, and, pursuant to the referee's findings, which were accepted *in toto,* the state board, on October 15, 1974, issued an order dissolving the Bratenahl local school district. As specific reasons for this order, the board found Bratenahl was not in compliance with R. C. 3311.29 on July 1, 1968 (the effective date in the statute), on February 9, 1970 (the date the request for an extended exception was denied), and on July 1, 1970 (the date the original exception expired).

In our opinion, Bratenahl's admitted noncompliance on the three preceding dates is immaterial to the resolution of the case *sub judice* in light of the Court of Common Pleas' decision, on August 30, 1973, holding that Bratenahl was a legally existing school district. The state board did not prosecute an appeal from this decision.

Inexplicably, the state board held further that Bratenahl was not in *de jure* compliance with the statute on October 15, 1974 (the date of the order of dissolution). However, it is undisputed by the parties that Bratenahl, since September of 1971, has operated a school system consisting of grades 1 through 12. Because this is the only issue involved in the determination of compliance with R. C. 3311.29, we find that the state board's actions on October 15, 1974, had been rendered moot by the course of preceding events.

It is clear that, as a legally existing local school district, Bratenahl's request for a state charter is entitled to consideration by the state board. Accordingly, the decision of the Court of Appeals allowing Bratenahl's complaint for a writ of mandamus should also be affirmed by this

court, and the state board should be directed to determine if the local school district presently meets minimum state standards.

Bratenahl's desire for autonomy is not of recent vintage, but is evident from the genesis of the city. In the late 1890's, Bratenahl, then a part of the city of Glenville, opted not to acquiesce in Glenville's decision to join the city of Cleveland. Concomitant with their formation as an autonomous local government, the residents of Bratenahl established their own independent school system, which they have maintained until this day.

The majority's opinion countenances a bureaucratic destruction of nearly a century of local control against the expressed desires of those affected by the conditions of Bratenahl's schools, i. e., the local school district's residents. This approbation is premised upon a legalistic legerdemain that permits the state board to ignore Bratenahl's compliance at the time of the hearing and to dissolve a viable local school district because of a temporary period of noncompliance in the past.

It is common knowledge that Ohio schools are currently in a condition of severe economic plight. We can perceive no logic in the dissolution of a complying local school district, whose residents have willingly provided financial support for their schools. This pernicious action on the part of the state board may well have the effect of replacing the enthusiasm and interest Bratenahl residents have shown in their schools with a general mood of disillusionment, cynicism and apathy.

For the foregoing reasons we would affirm the decisions of the Court of Appeals. We, therefore, respectfully dissent.