SPRINGFIELD CITY SCHOOL SUPPORT PERSONNEL, Appellant,

v.

STATE EMPLOYMENT RELATIONS BOARD, Appellee.

[Cite as *Springfield City School Support Personnel v. State Emp. Relations Bd.* (1992), 84 Ohio App.3d 294.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–739 and 92AP–740.

Decided Dec. 29, 1992.

*Cloppert, Portman, Sauter, Latanick & Foley* and *William J. Steele*, for appellant.

*Lee Fisher*, Attorney General, and *Wayne Kriynovich*, Assistant Attorney General, for appellee.

---

PETREE, Judge.

This case involves appeals from judgments of the Franklin County Court of Common Pleas dismissing both of appellant's R.C. 119.12 appeals for lack of subject matter jurisdiction. Appellant has set forth the following assignment of error in these appeals:

"The court below erred in determining that it lacked subject matter jurisdiction under Ohio Revised Code Section 119.12 to hear the appeal of a dismissal of a petition for representation election by the State Employment Relations Board."

Appellant, Springfield City School Support Personnel ("SCSSP"), an employee organization seeking to represent certain Springfield City Schools public employees in collective bargaining matters, filed an R.C. 4117.07(A) petition for a representation election with appellee State Employment Relations Board ("SERB") on June 19, 1991. SCSSP thereby sought to displace the incumbent employee organization, the Public Employees of Ohio, Teamsters Local 450 ("Teamsters"), which had represented these public employees at the Springfield City Schools since 1985.

On August 22, 1991, the Teamsters wrote a letter to SERB requesting dismissal of SCSSP's petition because the petition did not comply with Ohio Adm.Code 4117–5–02(A)(1) in that it failed to disclose SCSSP's "affiliation" with the Ohio Education Association/National Education Association ("OEA/NEA").[1] Hence, SCSSP filed a second petition on October 31, 1991, which did disclose its OEA/NEA affiliation. SCSSP also wrote a letter to SERB dated December 12, 1991, which suggested that the omission of the foregoing affiliation from the original petition was a just technicality[2] and that its second petition should be deemed to amend its first.

Nevertheless, SERB construed the Teamster's letter as a motion to dismiss and granted the motion in a "directive" on January 23, 1991. The directive, which was signed by Chairman Owens, Vice Chairman Pottenger, and Board Member Sheehan found that SCSSP's original petition violated Ohio Adm.Code 4117–5–02(A)(1) by failing to disclose SCSSP's affiliation and, therefore, SERB dismissed the petition without prejudice. The directive also contained the following language:

"You are hereby notified that an appeal may be perfected, pursuant to Ohio Revised Code Section 119.12, by filing a notice of appeal with the Board at 65 East State Street, 12th Floor, Columbus, Ohio 43215–4213, and with the Franklin County Common Pleas Court within fifteen days after the mailing of the Board's directive."

---

1. We note that, for some reason, the official petition for representation election form promulgated by SERB does not even mention the necessity of disclosing affiliation. That requirement is contained in SERB's own administrative rule, Ohio Adm.Code 4117–5–02(A).

2. Indeed, the original authorization for representation cards, apparently printed by the OEA/NEA, were used for the petition and signed by the public employees. The cards demonstrated SCSSP's affiliation with that labor organization. As SCSSP notes, SERB had discretion under Ohio Adm.Code 4117–1–02(E) to " * * * waive technical defects in any document filed with the board if no undue prejudice would result. * * *"

On the same day, SERB dismissed SCSSP's second petition for the reason that it was not filed within the "window period" of R.C. 4117.07(C)(6). That statute provides that an election petition can be filed "no sooner than one hundred twenty days or later than ninety days before the expiration date of any collective bargaining agreement," but if the governing collective bargaining agreement expires, then the filing can occur "until the public employer and exclusive representative enter into a new written agreement." SERB found that the governing collective bargaining agreement expired on September 30, 1991 and that the public employer and the Teamsters entered into a new agreement on October 1, 1991. That agreement would govern the employees at the Springfield City Schools until September 30, 1994. The dismissal was signed by the same SERB officials named above and also contained language regarding a right to appeal under R.C. 119.12.

SCSSP filed two notices of appeal to the common pleas court. The first notice of appeal challenged the dismissal of the original petition. It has been assigned appeal number 92AP–739 for purposes of this appeal. The second notice of appeal challenged the dismissal of the second petition. It has been assigned appeal number 92AP–740. We shall decide both appeals in this opinion.

The common pleas court ruled that it lacked subject matter jurisdiction to entertain the foregoing R.C. 119.12 appeals because the underlying dismissals were unreviewable "administrative" decisions, not quasi-judicial determinations entered after a hearing that could be appealed under R.C. 119.12.[3] The court cited Ohio cases holding that SERB's dismissals of unfair labor practice charges cannot be appealed under R.C. 119.12.

SCSSP argues that the common pleas court erred in concluding that it lacked subject matter jurisdiction to entertain the foregoing appeals. First, SCSSP argues that SERB waived the jurisdiction argument by including language in its decisions indicating that there was a right to appeal under R.C. 119.12. Second, SCSSP argues that the common pleas court erred in concluding that a dismissal of a petition for a representation election was not a quasi-judicial act.

We reject SCSSP's waiver argument. It is fundamental that subject matter jurisdiction addresses the power of a court to decide an issue. Such power is conferred by the Constitution and legislature, not by individual action. Plainly, subject matter jurisdiction cannot be waived. *Shawnee Twp. v. Allen*

---

3. The decision in 92AP–739 is reported in the SERB Reporter at *Springfield City School Support Personnel v. SERB* (C.P. Franklin, May 6, 1992), 1992 SERB 4–39. The decision in 92AP–740 is reported at *Springfield City School Support Personnel v. SERB* (C.P. Franklin, Apr. 24, 1992), 1992 SERB 4–38. A similar decision containing dicta on the appealability issue is reported at *Marion Cty. Children Serv. Bd. v. SERB* (C.P. Franklin, Jan. 30, 1991), 1991 SERB 4–12.

*Cty. Budget Comm.* (1991), 58 Ohio St.3d 14, 15, 567 N.E.2d 1007, 1009; *Baltimore & Ohio RR. Co. v. Hollenberger* (1907), 76 Ohio St. 177, 182–183, 81 N.E. 184, 186.

■ SCSSP's second argument is that the SERB's dismissals here were quasi-judicial acts that could be appealed under R.C. 119.12. SCSSP contends that the trial court should not have treated these legally binding decisions as mere ministerial acts. We note that in *Miami Univ. v. State Emp. Relations Bd.* (1990), 66 Ohio App.3d 251, 583 N.E.2d 1111, this court declined to consider the issue in a decertification case. *Id.* at 255, 583 N.E.2d at 1113, fn. 1.

■ SERB is an "agency" whose adjudications are subject to R.C. 119.12 judicial review. *South Community, Inc. v. State Emp. Relations Bd.* (1988), 38 Ohio St.3d 224, 527 N.E.2d 864. But a litigant has only a statutory, not an inherent, right to appeal a SERB adjudication. *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 152, 545 N.E.2d 1260, 1266. Under R.C. 119.12, only quasi-judicial orders may be appealed. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1990), 48 Ohio St.3d 45, 549 N.E.2d 157; *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562; *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 51 O.O.2d 35, 257 N.E.2d 371. An order is quasi-judicial if it meets the definition of "adjudication" contained in R.C. 119.01(D) and thereby creates the right to "notice and hearing" that is mandated by R.C. 119.06. *State ex rel. Bd. of Edn. v. State Bd. of Edn.* (1978), 53 Ohio St.2d 173, 7 O.O.3d 357, 373 N.E.2d 1238; *Brown v. Ohio Dept. of Transp.* (1992), 83 Ohio App.3d 879, 615 N.E.2d 1126; *In re Seltzer* (May 19, 1992), Franklin App. No. 91AP–677, unreported, 1992 WL 113142, jurisdictional motion allowed in (1992), 65 Ohio St.3d 1443, 600 N.E.2d 685. Even though an evidentiary hearing pursuant to R.C. 119.01 through R.C. 119.13 was not held on the administrative decision, the decision can still qualify as an adjudication. *Id.*

■ R.C. 119.01(D) defines "adjudication" as " * * * the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature." Hence, if an administrative agency, acting in its designated role as decisionmaker, decides a private right and such action is more than ministerial in nature, there has been an adjudication.

■ The cases relied upon by the common pleas court which relate to SERB's dismissal of unfair labor practice charges for lack of probable cause hinge on the absence of a determination of a private right for purposes of R.C. 119.01(D). As

recognized in these decisions, under the statutory scheme of R.C. 4117.12, SERB investigates unfair labor practices off the record and then makes a quasi-prosecutorial decision on whether there is probable cause to issue a complaint to charge violations of the public-sector labor laws. *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL–CIO v. Dayton City School Dist. Bd. of Ed.* (1991), 59 Ohio St.3d 159, 160, 572 N.E.2d 80, 81; *Ohio Assn. of Pub. School Emp., AFSCME, AFL–CIO v. Lorain Cty. Bd. of Mental Retardation & Developmental Disabilities* (1991), 72 Ohio App.3d 74, 593 N.E.2d 452; *Boieru v. State Emp. Relation Bd.* (1988), 54 Ohio App.3d 23, 27, 560 N.E.2d 801, 806; *Lorain Edn. Assn. v. Lorain City Bd. of Edn.* (1987), 41 Ohio App.3d 349, 351, 535 N.E.2d 1383, 1386. Consequently, pursuant to the role given to it by the legislature, SERB may exercise prosecutorial discretion to implement the Act in accordance with what it deems to be good labor policy for the benefit of the *public*. When the legislature contemplates such a quasi-prosecutorial role for an administrative agency, courts cannot and should not interfere in the process. *State ex rel. Citizens for Van Meter v. Ohio Elections Comm.* (1992), 78 Ohio App.3d 289, 604 N.E.2d 775 (no appeal when Elections Commission declines to find a violation of the law after a prosecutorial investigation); *Hanson v. Fabe* (Dec. 10, 1991), Franklin App. No. 91AP–435, unreported, 1991 WL 268739 (insurance superintendent's decision not to issue a complaint on a private party's allegations of unfair or deceptive trade practices is a non-judicial function closely akin to the role of a public prosecutor, and therefore it is not reviewable under R.C. 119.12).

The elections proceedings of R.C. 4117.07 are not analogous to unfair labor practice proceedings at all.[4] Though SERB does make an initial "investigation" to determine whether there is reasonable cause to believe a question of representation exists—a procedure similar to the investigation and probable cause determination made in unfair labor practice cases under R.C. 4117.12(B)—one cannot reasonably conclude that SERB plays the role of a public prosecutor in these public-sector union elections. SERB's determination of whether a question of

---

4. R.C. 4117.07 provides, in pertinent part:

"(A) When a petition is filed, in accordance with rules prescribed by the state employment relations board:

"(1) By any employee or group of employees, or any individual or employee organization acting in their behalf, alleging that at least thirty per cent of the employees in an appropriate unit wish to be represented for collective bargaining by an exclusive representative, or asserting that the designated representative is no longer the representative of the majority of employees in the unit, the board shall investigate the petition, and if it has reasonable cause to believe that a question of representation exists, provide for an appropriate hearing upon due notice to the parties.

"(2) * * *

"If the board finds upon the record of a hearing that a question of representation exists, it shall direct an election and certify the results thereof."

representation exists is essentially a head-counting matter. As occurs in federal practice, under the Ohio statute and administrative rules,[5] individual employees sign authorization cards demonstrating their intent to have other representation and, if enough of these cards are obtained by the rival union, then there is reasonable cause to believe that a question of representation exists. An evidentiary hearing before SERB is only necessary if, for instance, the authenticity of the cards is challenged. At such a hearing, SERB rules on whether there is a legitimate question of representation. See, *e.g., State ex rel. Independence Local School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1991), 62 Ohio St.3d 134, 580 N.E.2d 430 (writ of prohibition would not lie where SERB was to determine eligibility of employees to vote). If there is, then an election must be held to conclusively determine the representation issue.

Given this statutory scheme, it is difficult to understand any argument that SERB has some kind of unfettered discretion to disregard the wishes of the public employees seeking to oust the incumbent union. If SERB had such unfettered discretion, then the R.C. 4117.03(A)(1) rights of public employees to join or refrain from joining an employee organization "of their own choosing" would be of little value, for SERB would be free to favor any incumbent union and quell any competitive election to oust it. Employees seeking recognition of another union would be powerless to change the *status quo.* There is nothing in the statute to suggest that the legislature intended such a role for SERB. On the contrary, the statutory scheme and context supports the conclusion that SERB is to act as a tribunal in the election process. In that capacity, it determines statutorily created rights for the benefit of the private parties involved in the election proceedings.

Having determined that SERB decides private rights in these election matters, we turn next to the issue of whether the decision to dismiss a petition for a representation election on procedural grounds is ministerial in nature.

As this court said in *In re Seltzer, supra,* at 5, a ministerial act is an act done under a given state of facts in obedience to the mandate of legal authority and which is to be performed without the exercise of individual judgment or discretion. In the present case, SERB's own rules provided that it had discretion to waive technical defects in documents filed with the agency if no undue prejudice resulted. In effect, SERB was applying its construction of its legally binding rules to the petitions at hand and found against SCSSP. SERB dismissed SCSSP's petition just as a court would dismiss a complaint for failure to state a

---

5. See Ohio Adm.Code 4117–5–04.

claim under Civ.R. 12(B)(6). One would hardly characterize a Civ.R. 12(B)(6) dismissal of a lawsuit as merely a "ministerial" act and SERB's similar action to like effect should not be viewed in that manner either.[6]

Moreover, the fact that the dismissal of the original petition was entered without prejudice does not render it any less reviewable under R.C. 119.12. If a court dismisses an action without prejudice, that dismissal is still a final order which can be appealed to a court of law. There is no reason to develop a different rule in administrative law under R.C. 119.12.

SCSSP's assignment of error is well taken. Since the judgments below were rendered on purely jurisdictional grounds, we remand these cases to the trial court for a determination of the merits, if any, of SCSSP's R.C. 119.12 appeals.

For the foregoing reasons, SCSSP's assignment of error is sustained with respect to appeal numbers 92AP–739 and 92AP–740. The judgments of the common pleas court are reversed and the causes are remanded for further proceedings consistent with this opinion and in accordance with the law.

*Judgments reversed*
*and causes remanded.*

JOHN C. YOUNG, P.J., and TYACK, J., concur.

---

**6.** Comparisons to federal practice are not entirely profitable because the NLRB's determinations are not generally subject to the federal Administrative Procedure Act. However, a good overview of election procedure can be found in 1 Feerick, Baer & Arfa, NLRB Representation Elections: Law, Practice & Procedure (3 Ed.1992) 201.1, Section III. In particular, the authors describe the dismissal of petitions for a representation election at Section 7.2.1. Under federal practice, an agent of the board investigates the petition and determines if the board has jurisdiction, if the petition is timely, and if there is a sufficient showing of interest. If these elements are lacking, the agent will request withdrawal of the petition, and if the petitioner does not acquiesce, then the agent will recommend dismissal to the NLRB regional director. If the director adopts the recommendation, then the petition is dismissed. However, this dismissal *is* appealable to the NLRB.