DECISION AND JUDGMENT ENTRY
This appeal is from the judgment of the Juvenile Division of the Highland County Court of Common Pleas which vested with Highland County Children Services the permanent custody of appellant's child, by the granting of appellees' R.C. 2151.415(F) motion to terminate the parental rights of appellant, pursuant to R.C. 2151.415(A)(4).
Appellant asserts that the lower court was without jurisdiction because it did not comply with the notice requirements of Juv.R. 16 and 29 by perfecting service of process on the father. We find this argument to be without merit as it amounts to a challenge of personal jurisdiction over the father and appellant is without the requisite standing to make such a challenge.
Appellant also argues that R.C. 2151.415(F) was not intended to provide private individuals a means to gain, or direct to an agency, the permanent custody of a child. We agree, but find that appellees' attempt to gain permanent custody substantially comports with a proper motion brought under the same statutory provision to gain legal custody of the child. Therefore, we reverse and remand the judgment of the lower court for further proceedings consistent with this opinion.
STATEMENT OF THE CASE AND FACTS
The appeal before this Court involves a most unfortunate set of facts: an on-going legal battle over a five-year-old girl — not between two divorcing parents, but between the maternal grandparents who have reared her from infancy and her mother who hardly knows her.
We begin by briefly examining the girl's familial situation, specifically, her relationship with her mother, her grandparents, and her mother's previous and current spouses. Tia Sierra Shepherd was born to Appellant Melissa Butler Shepherd Moon on March 22, 1996. Three months after Tia's birth, appellant left Tia to be reared by appellant's parents, Appellees Kenneth and Margie Butler.
Tia has never known her father. However, two men have played significant roles in appellant's life since Tia's birth. First is Chester Shepherd, who was married to appellant when Tia was born. However, when Chester Shepherd and appellant divorced, the domestic court found that he was not the biological father of Tia. Second is Stephen Moon, to whom appellant is currently married. Although he testified in the lower court that he is Tia's biological father, no such legal relationship has been established to date.
We next discuss the procedural posture of the instant appeal. On February 12, 1997, appellees filed a complaint in the Juvenile Division of the Highland County Court of Common Pleas (juvenile court), pursuant to R.C. 2151.27, alleging that Tia was a neglected child, as defined in R.C. 2151.03. Appellant requested a continuance of the hearing on this complaint, alleging that she was unable to attend the hearing because she was on pre-term-labor medication. The juvenile court denied appellant's request and, upon hearing, found Tia to indeed be a neglected child. Thus, pursuant to R.C. 2151.353(A)(2), the juvenile court placed Tia in the temporary custody of appellees and issued a custody order — a structured case plan to be administered by a children services agency in appellant's county — by which appellant was to visit and help support Tia.
 I.
In the first of three appeals of this matter to this Court, appellant appealed the grant of temporary custody to appellees, claiming that the juvenile court abused its discretion in refusing to grant appellant's request for a continuance. See In the Matter of: Tia Sierra Shepherd (May 11, 1998), Highland App. No. 97CA941, unreported. We overruled appellant's assignment of error, giving deference to the decision of the juvenile court.
Appellant did not comply with the custody order and attendant structured case plan: she missed one hundred seventeen of the one hundred forty scheduled visits, she failed to give notice to cancel her visits sixty-six percent of the time, her child-support payments were sporadic, and she failed to pay medical bills. Accordingly, on June 16, 1998, appellees filed a motion with the juvenile court, pursuant to former R.C.2151.353(B) and former R.C. 2151.414(B), seeking to obtain permanent custody of Tia.
However, based on the supposition that no one was legally established to be Tia's father, appellees made no effort to serve notice of the action on either Chester Shepherd, Stephen Moon, or the actual, albeit undetermined, biological father of Tia. Nevertheless, the juvenile court granted the motion and terminated appellant's parental rights, placing Tia in the permanent custody of appellees.
 II.
In the second appeal to this Court regarding this matter, appellant challenged the juvenile court's decision to place Tia in the permanent custody of appellees and to terminate her parental rights. See In reShepherd (Sept. 29, 1999), Highland App. No. 99CA04, unreported [hereinafter Shepherd II]. We will briefly address the majority and concurring opinions in Shepherd II.
In the majority opinion of Shepherd II, in which this author concurred, we held that the juvenile court had no authority to grant private individuals permanent custody in the manner it had utilized to do so. We found that the juvenile court erroneously construed former R.C.2151.353(B) and former R.C. 2151.414(B) to allow a private individual to directly gain permanent custody of a neglected child, when the statutes contemplate that only a public children-services or a private child-placing agency (agency) is able to gain such custody. Consequently, we reversed and remanded the case to the juvenile court for further proceedings.
In addition to our finding, we provided an outline for the juvenile court and appellees to follow on remand. We explained as follows.
 [A]ppellees, as Tia's legal custodians, may file pursuant to R.C. 2151.415(F) for a termination of appellant's parental rights. Even then, however, * * * appellees' legal status in relation to Tia would not be immediately affected. * * * Permanent custody would vest with a public children services agency or a private child placing agency. * * * Once all of appellant's residual rights and obligations were terminated by this permanent placement, the agency could then consent to Tia's adoption by * * * appellees in a proceeding under R.C. 3107.05.
(Emphasis added.) Shepherd II.
However, the concurring opinion in Shepherd II took the position that (1) the party bringing the action must be an agency — not a private individual, and (2) there must be a determination of the suitability of the parents before appellees could take custody of the child.
On remand, appellees followed the framework we set forth in the majority opinion of Shepherd II: instead of directly seeking permanent custody for themselves, appellees filed a motion to modify the prior custody order, pursuant to R.C. 2151.415(F), and requested the court to enter a dispositional order terminating appellant's parental rights, pursuant to R.C. 2151.415(A)(4). The juvenile court granted appellees' motion and gave permanent custody of Tia to Highland County Children Services (HCCS).
 III.
Appellant now appeals the judgment of the juvenile court for the third time in this matter. Appellant presents the following assignments of error for our review.
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT COMPLYING WITH THE NOTICE REQUIREMENTS OF JUV.R. 16 AND 29.
 ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY TERMINATING APPELLANT'S PARENTAL RIGHTS AND VESTING PERMANENT CUSTODY IN APPELLEES WHERE THE COURT LACKED JURISDICTION FROM THE BEGINNING IN THAT APPELLEES WERE PRIVATE INDIVIDUALS WHO FILED UNDER A CODE SECTION WHICH APPLIES ONLY TO PUBLIC CHILDREN SERVICES OR PRIVATE CHILD PLACING AGENCY [sic], THUS CAUSING THE COURT TO EMPLOY AN INCORRECT STANDARD.
ANALYSIS
We address each assignment of error seriatim.
 I.
Appellant argues in her First Assignment of Error that the juvenile court was without jurisdiction to alter the custody order of Tia because it failed to comply with the notice requirements of Juv.R. 16 and 29. In response, appellees argue, inter alia, that appellant lacks the requisite standing to make such a challenge. We agree with appellees.
Juv.R. 29(B) provides, in relevant part, the following.
At the beginning of the hearing, the court shall:
 (1) Ascertain whether notice requirements have been complied with, and if not, whether the affected parties waive compliance;
* * *
 (1) Inform unrepresented parties of the right to counsel, and determine if such parties are waiving their right to counsel;
 (4) Appoint counsel for any unrepresented party entitled thereto under Rule 4(A) who does not waive his right to counsel.
Juv.R. 29(B).
Juv.R. 16 provides, in pertinent part, "[w]hen the residence of a party is unknown, and cannot with reasonable diligence be ascertained, service shall be made by publication." Juv.R. 16.
A review of the record reveals that the juvenile court, indeed, did not determine whether the notice requirements were complied with or whether service was waived by an affected party — namely, Tia's father. Thus, appellant argues, the juvenile court was without jurisdiction to hear this matter.
In response, appellees raise three arguments: (1) appellant does not have standing to challenge the failure of service on the father; (2) the failure-of-service objection is waived since appellant did not preserve it in her first appearance before the juvenile court; and (3) because the child does not have a legally established father, service on the mother alone was sufficient. We find appellees' first and second arguments dispositive of this issue.
We begin by discussing the purpose of Juv.R. 29(B). Juv.R. 29(B) provides a checklist to aid the juvenile court in ensuring that the parties before the court are afforded due-process protection under the Ohio and United States Constitutions. Subsections (1), (3), and (4) of Juv.R. 29(B) address whether the appropriate parties have been notified and what the juvenile court should do if they have not. In other words, the compliance of the juvenile court with these subsections of Juv.R. 29(B) ensures that there is personal jurisdiction over the parties.
The sum and substance of appellant's First Assignment of Error is a challenge to the juvenile court's personal jurisdiction over Tia's father. See, e.g., In re Ciara B., Michael B., Emma B., Deanna B. (July 2, 1998), Lucas App. No. l-97-1264, unreported (explaining that "[t]he issue in this type of case is not whether the juvenile court has subject matter jurisdiction * * *. Instead, the issue * * * is whether appellant can challenge the validity of the entire judgment because the court lacked personal jurisdiction over a nonappealing party"). Personal jurisdiction must be challenged by someone with standing, who has properly preserved the objection in the record of the lower court, and who has not waived the objection by his or her lack of appropriate action — precisely the first two arguments posited by appellees.[1]
Appellees in their first argument, in response to appellant's First Assignment of Error, assert that appellant does not have standing to challenge the failure of service on the father. Standing, in the most elementary sense of the concept, requires that the right to maintain an action must be vested in the person instituting it. See Steinle v. Cityof Cincinnati (1944), 142 Ohio St. 550, 53 N.E.2d 800. From this proposition comes the essential inquiry in the matter sub judice: whether appellant has demonstrated that the failure to perfect service on the father prejudiced her rights. See In re Rackley (Apr. 8, 1998), Summit App. No. 18614, unreported; accord In re Young (Feb. 5, 1996), Stark App. No. 95-CA-0180, unreported. A review of the record reveals no such showing by appellant.
We next address appellees' second argument, that the failure-of-service objection is waived because appellant did not preserve it in her first appearance before the lower court. Even assuming, arguendo, we were to find that appellant did have standing to challenge the lack of service upon the father, we still would be unable to overcome the fact that this is an issue of personal jurisdiction which appellant has waived by her inaction below; "[a] motion claiming insufficiency of service of process attacks the personal jurisdiction of the Court over the movant. * * * [A] party must assert such [a] defense in his first pleading, motion, orappearance; otherwise, he waives his right to do so at a later time." (Emphasis added.) In re Zaria Crews (July 30, 1999), Montgomery App. No. 17670, unreported (quoting, and agreeing with, the trial court); accordIn re Jennifer L. (May 1, 1998), Lucas App. No. L-97-1295, unreported (stating that "the father waived his arguments relating to personal jurisdiction, and his ability to challenge the temporary custody order of the trial court * * * when counsel * * * appeared on his behalf at the permanent custody hearings [and] did not argue that the trial court had no [personal] jurisdiction").
Finally, appellees' third argument, that notice is not required because there is not a recognized father, is irrelevant in light of our foregoing discussion. Nevertheless, we note that this argument is an incorrect reading of the law. Juv.R. 16 clearly provides guidance when a court is unclear as to who, or where, the father of a child is: "service shall be made by publication." Juv.R. 16; see, e.g., In re Ware (July 17, 1980), Cuyahoga App. No. 79-03243, unreported (holding that service by publication is required when a father is unknown, and that a mother's statement that she does not know who the father is does not dispense with the requirement).
In sum, we find that appellant is without the requisite standing to challenge the personal jurisdiction of the juvenile court over Tia's father: (1) she did not establish in the record below how the failure to perfect service on the father prejudiced her rights; and (2) even if,arguendo, appellant was able to demonstrate that her rights were substantially affected, she effectively waived her right to assert the challenge by failing to preserve the objection in the record.
Appellant's First Assignment of Error is OVERRULED.
 II.
Appellant argues in her Second Assignment of Error that the juvenile court lacked jurisdiction to terminate appellant's parental rights and vest permanent custody in HCCS because appellees are private individuals who filed under an Ohio Revised Code section which applies only to an agency. While we agree with appellant that R.C. 2151.415(F) was not intended to provide private individuals a means to gain permanent custody — whether that custody be in themselves or in an agency — we find that the litigation involved in this matter substantially conforms to a proper motion, brought by way of this same provision, to gain legal custody of Tia.
We commence by noting that appellant's argument is flawed. The argument appellant wages is not a matter of jurisdiction, but rather one of statutory authority. We previously addressed this same issue in the majority opinion in Shepherd II where we explained that R.C. 2151.23
vests the juvenile court with subject-matter jurisdiction in neglected-child proceedings. Appellant's Second Assignment of Error involves only an issue of whether "the trial court had the statutoryauthority to grant permanent custody of Tia to appellees." (Emphasis added.) Shepherd II.
We now turn to appellant's challenge that appellees employed incorrect Ohio Revised Code provisions in this case. At the outset, we note that this matter involves a confusing and complex interplay of various provisions within the Ohio Revised Code. See State v. Bowen (July 28, 2000), Hamilton App. No. C-990878, unreported (Painter, J., concurring) (stating, "[this] is an example of the poor writing endemic in what the legislature has the gall to call the Revised Code. Almost all of the Code is badly drafted, and much is nigh indecipherable."). Accordingly, we provide the following detailed analysis in an effort to elucidate the murky waters of R.C. Chapter 2151.
The structure of our analysis is as follows. First, we will analyze the two primary statutory schemes germane to situations such as that involved in the instant matter. Second, in an effort to correct the procedural inaccuracies suggested by this Court in Shepherd II, we will revisit the foregoing discussion in light of that case. Third, we will conclude by applying the principles enunciated herein to the appeal sub judice.
 A.
In situations such as this, the Ohio Revised Code provides two primary routes, neither of which would permit a private individual to gain, or direct to an agency, the permanent custody of a child.
1.
The first route, which we will refer to as the "neglected-child scheme," begins with a grant of jurisdiction provided by R.C.2151.23(A)(1). This section provides that "[t]he juvenile court has exclusive original jurisdiction * * * [c]oncerning any child * * * alleged to be a * * * neglected * * * child. R.C. 2151.23(A)(1). By way of this grant of jurisdiction, a public or private party can initiate an action pursuant to R.C. 2151.27 to have a court determine whether a child is neglected. See, also, R.C. 2151.03(A) (providing the definition for a "neglected child").
The standard of proof required to prove a child neglected is the intermediate burden of clear-and-convincing evidence. See State v.Ingram (1992), 82 Ohio App.3d 341, 346, 612 N.E.2d 454 (explaining that clear-and-convincing evidence is "more than a preponderance of the evidence and less than evidence beyond a reasonable doubt").
Once the child is adjudicated neglected, the court may, pursuant to R.C. 2151.353(A), make any of the following dispositions.
(1) Place the child in protective supervision;
 (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified family foster home or in any other home approved by the court;
 (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 (4) Commit the child to the permanent custody of a public children services agency or private child placing agency * * *.
 (5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency * * *.
 (6) Order the removal from the child's home until further order of the court of the person who committed abuse * * * against the child * * *.
(Emphasis added.) R.C. 2151.353(A).
As the terms "temporary custody," "legal custody," and "permanent custody" have particular bearing on this case, we will further address each of them. We will begin with their statutory definitions, then address their respective standards for awarding custody.
First, temporary custody means "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement." R.C. 2151.011(B)(46). Any person wishing temporary custody of a child must file a motion seeking such custody prior to the dispositional hearing. An award of temporary custody has a time limit: it must terminate one year after the earlier of the date on which the complaint was filed or the date on which the child was first placed into shelter care. See R.C. 2151.353(F); Juv.R. 14(A).
Second, legal custody means the following.
 [A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court.
(Emphasis added.) R.C. 2151.011(B)(17). Legal custody leaves intact "residual parental rights, privileges, and responsibilities." R.C.2151.011(B)(17). These residual rights are defined as "those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(41). Like temporary custody, any person wishing legal custody of a child must file a motion seeking such custody prior to the dispositional hearing. The chief difference between legal and temporary custody is that legal custody is presumptively more indelible, since there is not a statutory time limitation as there is with temporary custody.
Third, permanent custody is defined in R.C. 2151.011(B)(26) to mean a legal status that "vests in a public children services agency or aprivate child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." (Emphasis added.) R.C. 2151.011(B)(26). It is clear from this definition that permanent custody is available only to an agency.
Unlike temporary and legal custody, there are two ways by which an appropriate party may request permanent custody. It can either: (1) request the custody as part of the dependency hearing; or (2) obtain temporary custody in itself or in long-term foster care and subsequently file a motion for permanent custody. See R.C. 2151.353(B). We note that it was the latter option that was incorrectly utilized by appellees in the instant matter.
We next turn to the standards for awarding such custody. We will begin by exploring the standard for awarding legal or temporary custody and then turn to the standard for awarding permanent custody.
Great discretion is to be given to a juvenile court in determining whether to award legal or temporary custody. See In re Crenshaw (Feb. 10, 1997), Stark App. No. 96-CA-00116, unreported. In exercising this discretion, the juvenile court must consider the totality of the circumstances, including attention to the myriad factors set forth in R.C. 3109.04. See In re Pryor (1993), 86 Ohio App.3d 327, 620 N.E.2d 973.
Permanent custody is the most drastic of remedies available to juvenile courts in determining the disposition of a child. To protect what has been described as the "paramount right" of parents, the General Assembly requires that permanent custody can only be awarded to an agency if it complies with the strict standard set out in R.C. 2151.414. See In reFassinger (1975), 42 Ohio St.2d 505, 330 N.E.2d 431.
 The court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody * * *.
(Emphasis added.) R.C. 2151.414(B) (Again, the Ohio Revised Code is clear in that permanent custody is only available to an agency; it plainly refers to the movant as "the agency that filed the motion.").
In sum, in a matter brought by way of the neglected-child scheme, two hurdles must be cleared. First, the party must show, by clear and convincing evidence, that the child is neglected. Second, the court must determine the appropriate disposition of the child. If the party is seeking temporary or legal custody, the court is afforded considerable discretion — utilizing the totality-of-the-circumstances standard. However, if the party is seeking permanent custody, the court must find by clear and convincing evidence that it is in the best interest of the child to be placed with the agency.
Further, the available disposition options are different depending on whether the party seeking custody is a private individual or an agency. An agency may gain temporary or permanent custody of the child; a private individual, on the other hand, may only gain temporary or legal custody — a private individual simply cannot gain permanent custody under the neglected-child scheme. See Kurtz Giannelli, Ohio Juvenile Law (2000), 253, Section 20.13, and 339-44, Sections 27.6-27.10.
2.
The second route, which we will refer to as the "pure child-custody scheme," begins with a grant of jurisdiction provided by R.C.2151.23(A)(2). This section vests original jurisdiction with the juvenile court "to determine the custody of any child not a ward of another court." R.C. 2151.23(A)(2). This broad grant of jurisdiction includes a child-custody dispute between biological parents and nonparents. SeeReynolds v. Goll (1992), 80 Ohio App.3d 494, 609 N.E.2d 1276, affirmed (1996), 75 Ohio St.3d 121, 661 N.E.2d 1008. In such disputes, the Supreme Court of Ohio, in Reynolds, 75 Ohio St.3d at 121, 661 N.E.2d at 1008, has provided specific instruction.
 [W]e have long recognized that `the welfare of the minor is first to be considered.' * * *. We have further stated that parents who are deemed suitable are considered to have the `paramount' right to custody of their minor children. * * *. However, in balancing the interests of both the parent and child, the right of custody by the biological parents is not absolute and can be forfeited. Thus, `parents may be denied custody only if the preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable — that is, an award of custody would be detrimental to the child.'
(Emphasis added.) Reynolds v. Goll, 75 Ohio St.3d at 124,661 N.E.2d at 1010 (Citations omitted.); see, e.g., In re Perales (1977),52 Ohio St.2d 89, 369 N.E.2d 1047, syllabus (explaining that "[i]n an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability").
Again, as is the case in a neglected-child proceeding, a private individual may be awarded, at most, legal custody. See Perales,52 Ohio St.2d at 89, 369 N.E.2d at 1047 (Brown, J., dissenting) (stating that "the Juvenile Court is here dealing with the same sort of `legal custody' as is defined in [R.C. 2151.011(B)(17)]"); accord Davis v. Wilson
(1997), 123 Ohio App.3d 19, 702 N.E.2d 1227 (explaining that, "[i]nPerales, the Supreme Court [of Ohio] held that a juvenile court may not award legal custody to a nonparent unless it first determines that both of the child's parents are `unsuitable'"); cf. In re Byrd (1981),66 Ohio St.2d 334; 421 N.E.2d 1284 (stating that "[w]hen a court awards custody to any party [other than specifically citing permanent custody pursuant to R.C. 2151.011(B)(26)], it is awarding `legal custody' of the child as that term is defined in [R.C. 2151.011(B)(17)]").
In sum, the relevant inquiry in awarding legal custody in a parent-nonparent pure child-custody dispute is whether, by the preponderance of the evidence, the parent is unsuitable.[2]
 B.
We now revisit the foregoing discussion of the two statutory schemes in light of the majority and concurring opinions in Shepherd II. As we have now determined that neither of these opinions correctly disposes of the issues raised in Shepherd II, we will address each in turn. We note at the outset that the majority opinion remained within the confines of the neglected-child scheme while the concurring opinion suggested utilizing the pure child-custody scheme.
1.
In the majority opinion we found that the juvenile court erroneously construed former R.C. 2151.353(B) and former R.C. 2151.414(B) to allow a private individual to gain permanent custody of a neglected child, when the neglected-child scheme contemplates only an agency as being able to gain such custody. We maintain that this is a correct interpretation of the law. Unfortunately, we went a step further and provided what was, for all intents and purposes, a procedural roadmap for appellees and the juvenile court to follow on remand.
Our roadmap suggested that appellees could remain within the neglected-child scheme and file a motion pursuant to R.C. 2151.415(F) to modify the prior temporary custody order and award permanent custody of Tia not to themselves, but to an agency pursuant to R.C. 2151.415(A)(4). Upon revisiting this issue, we have arrived at the conclusion that we were in error; R.C. 2151.415(F) was not intended to be utilized by private individuals to terminate parental rights and direct the permanent custody of a child to an agency.
The key provision that has led us to this conclusion is R.C. 2151.415(B). R.C. 2151.415(F) allows a motion to be filed to terminate or modify a custody order and to permit the issuance of a dispositional order "set forth in divisions (A)(1) to (5) * * *." R.C. 2151.415(F). Appellees requested an order to "permanently terminat[e] the parental rights of the child's parents." R.C. 2151.415(A)(4). Because the lower court granted the dispositional order, R.C. 2151.415(B) is necessarily invoked.
R.C. 2151.415(B) requires "that all orders for permanent custody shall be made in accordance with sections 2151.413 and 2151.414 of the RevisedCode." (Emphasis added.) R.C. 2151.415(B). As R.C. 2151.415(B) requires adherence to both R.C. 2151.413 and R.C. 2151.414, we will address each in turn.
First, R.C. 2151.413 provides that "[a] public children services agencyor private child placing agency that, pursuant to an order of disposition under [R.C. 2151.353(A)(2)] * * * is granted temporary custody * * * may file a motion * * * requesting permanent custody of the child * * *." (Emphasis added.) R.C. 2151.413(A). Clearly, the General Assembly meant for this subsection to permit only an agency to file such a motion.
Second, as we explained earlier, R.C. 2151.414(B) also plainly contemplates that only an agency is capable of filing such a motion; this section explains, in pertinent part, that "[t]he court may grant permanent custody * * * if the court determines at the hearing * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody * * * to the agency that filed the motion * * *. (Emphasis added.) R.C. 2151.414(B); see, generally, In reKincaid, Lawrence App. No. 00CA3, unreported (providing a detailed discussion of the R.C. 2151.414(B) two-pronged analysis for granting permanent custody to an agency). Thus, it was a mistake for this Court to suggest that appellees could utilize R.C. 2151.415(F) on remand to direct the permanent custody of Tia to HCCS.
However, we note that it would have been entirely permissible for appellees to have utilized R.C. 2151.415(F) to request "[a]n order that the child be placed in the legal custody of a relative or other interested individual." (Emphasis added.) R.C. 2151.415(A)(3).
Despite the fact that our instruction was dicta, we express our regret for providing such misinformation. As we stated earlier, it is our conclusion that, in the framework of the neglected-child scheme, the extent of relief available to private individuals is temporary or legal custody of the child, not permanent custody. We add to that the proposition that private individuals cannot move the court to place the child in the permanent custody of themselves or an agency; permanent custody is a mechanism wholly prescribed to an agency. Accordingly, we abandon this portion of Shepherd II.
2.
We next address the concurring opinion in Shepherd II. The concurring opinion suggests the use of the pure child-custody scheme in lieu of the erroneous roadmap provided in the majority opinion. See Shepherd II
(Abele, J., concurring), citing Reynolds, 75 Ohio St.3d at 121,661 N.E.2d at 1008, and Perales, 52 Ohio St.2d at 89, 369 N.E.2d at 1047. While we agree that this is a viable manner by which appellees could have initiated their claim, there are procedural inaccuracies here too that cannot be left untouched.
First, the assertion that a private individual cannot initiate an action under the neglected-child scheme is erroneous. It is fair to say that the crux of the neglected-child scheme is to provide the state a mechanism to intervene for the benefit of the child. See In The Matterof: Michelle Ellen Dillon (Dec. 24, 1981), Lawrence App. No. 1499, unreported (explaining that "[t]he basic distinction [between R.C.2151.23(A)(1) and R.C. 2151.23(A)(2)] is that in a dependency proceeding the state itself intervenes and assumes custody for the benefit of the child when, and only when, one or more of the statutory definitions of dependency in R.C. 2151.04 exist"). However, R.C. 2151.27 expressly states that "Any person having knowledge of a child who appears to be a * * * neglected * * * child may file a sworn complaint with respect to that child in the juvenile court * * *." (Emphasis added.) R.C. 2151.27(A); see In re Burgess (1984), 13 Ohio App.3d 374; 469 N.E.2d 967 (referring to such a private individual as a "complaining witness," the court stated that "R.C. 2151.27 permits anyone having knowledge of a child who appears to be delinquent to file a sworn complaint"). While the private individual initiating such an action may technically only be a witness, the scheme clearly permits the disposition of a child to the temporary or legal custody of a relative. See R.C. 2151.353(A)(2) (permitting the grant of "temporary custody [to] * * * a relative residing within or outside the state"); R.C. 2151.353(A)(3) (permitting the grant of "legal custody * * * to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child"). Thus, it is our reading of these provisions that a private individual may initiate such an action and request, and ultimately gain, temporary or legal custody of the child.
Second, the suggestion that permanent custody may be awarded to a private individual via the pure child-custody scheme is incorrect. As we have explained, a private individual cannot gain permanent custody, with the attendant termination of parental rights, no matter which of these statutory schemes constitutes the basis for the initial filing. The most a private individual can hope to gain under either statutory scheme would be the legal custody of the child; the General Assembly, in R.C. Chapter 2151, constrained permanent custody solely to agencies.
 C.
In our estimation, the underlying problem with appellees' application of the Ohio Revised Code in this matter can be reduced to the familiar phrase of attempting to fit a square peg into a round hole. A review of the extensive litigation in this matter has, however, led us to the conclusion that appellees' erroneous attempt to gain permanent custody of Tia substantially comports with a proper motion to gain legal custody of Tia within the neglected-child scheme.
Appellees initiated an action within the neglected-child statutory scheme to have Tia declared a neglected child. The juvenile court found, by clear and convincing evidence, that Tia was indeed neglected. The court then considered the totality of the circumstances and granted appellees the temporary custody of the child. Because appellant clearly failed to comply with the case plan, appellees sought greater rights in the upbringing of Tia.
Thus, appellees filed a motion pursuant to former R.C. 2151.353(B) to gain permanent custody of Tia for themselves. In Shepherd II we held that this was impermissible — such a motion was intended to be available only to an agency, not a private individual. This Court then suggested that appellees, on remand, should file a motion pursuant to R.C.2151.415(F) to modify the prior temporary custody order and award permanent custody not to themselves, but to an agency pursuant to R.C.2151.415(A)(4). As we discussed above, this too was an incorrect application of the neglected-child scheme — again, this device was meant only for an agency.
We find that appellees' primary purpose, after appellant failed to comply with the case plan while Tia was in the temporary custody of appellees, was to seek the greatest possible custody they could of Tia — which should have been legal custody, instead of permanent custody. Thus, we find, in the interest of justice, that appellees' attempt to gain permanent custody of Tia substantially comports with a proper motion brought by way of R.C. 2151.415(F) to gain legal custody of the child. See, e.g., Pryor, 86 Ohio App.3d at 337, 620 N.E.2d at 973
(explaining that, "[Ohio courts] are required to liberally interpret and construe R.C. Chapter 2151 in order to provide for the care and protection of children * * *.").
We reverse and remand this case to the juvenile court to hold an R.C.2151.415(F) hearing to determine whether a dispositional order of legal custody, pursuant to R.C. 2151.415(A)(3), should be awarded to appellees. This is not to say that the lower court's determination must be made de novo, it certainly may consider that evidence already in the record when making this determination.
Appellant's Second Assignment of Error is SUSTAINED.
CONCLUSION
Appellant argues in her First Assignment of Error that the juvenile court was without jurisdiction to alter the custody order of Tia because it failed to comply with the notice requirements of Juv.R. 16 and 29. We overrule this assignment of error because it amounts to a challenge of the personal jurisdiction of the juvenile court over the father and appellant is without the requisite standing to make such a challenge. Appellant did not establish in the record below how the failure to perfect service on the father prejudiced her rights. Further, assuming arguendo, appellant did have standing, her failure-of-service objection would be waived because she did not preserve it in her first appearance before the lower court.
Appellant argues in her Second Assignment of Error that the juvenile court lacked jurisdiction to terminate appellant's parental rights and vest permanent custody in HCCS because appellees are private individuals who filed under an Ohio Revised Code section which applies only to an agency. We sustain this assignment of error because R.C. 2151.415(F) was not intended to provide private individuals a means to gain, or direct to an agency, the permanent custody of a child. Nevertheless, we find, in the interest of justice, that the litigation involved in this matter substantially conforms to a proper motion brought by way of 2151.415(F) to request the legal custody of Tia pursuant to R.C. 2151.415(A)(3).
Therefore, the judgment of the Juvenile Division of the Highland County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.
[1] It is imperative to differentiate personal jurisdiction from subject-matter jurisdiction as there are important distinctions between the two.
Subject-matter jurisdiction is the power conferred upon a court to decide a particular matter or issue on its merits. See Springfield CitySchool Support Personnel v. State Emp. Relations Bd. (1992),84 Ohio App.3d 294, 616 N.E.2d 983. In the matter before us, subject-matter jurisdiction is conferred upon the juvenile court by the Ohio legislature. See R.C. 2151.23(A). Because subject-matter jurisdiction defines the competency of a court to render a valid judgment, it cannot be waived. See Time Warner AxS v. Pub. Util. Comm. (1996), 75 Ohio St.3d 229, 661 N.E.2d 1097. Accordingly, lack of subject-matter jurisdiction is grounds for mandatory dismissal of an action. See Logan v. Vice (1992), 79 Ohio App.3d 838, 608 N.E.2d 786.
Personal jurisdiction, on the other hand, is the power of a court to enter a valid judgment against an individual. See Meadows v. Meadows
(1992), 73 Ohio App.3d 316, 596 N.E.2d 1146. In order for an individual to be subject to the personal jurisdiction of a court, the individual must have been served with process, entered an appearance in the court, or waived service. See Maryhew v. Yova (1984), 11 Ohio St.3d 154,464 N.E.2d 538; accord King v. Hazra (1993), 91 Ohio App.3d 534,632 N.E.2d 1336.
In sum, the chief difference between subject-matter and personal jurisdiction — as it relates to the appeal sub judice — is that the former cannot be waived and may be addressed sua sponte, while the latter may be waived if not objected to upon the party's first appearance in court.
[2] We note that the pure child-custody scheme is more liberal than the neglected-child scheme. Unlike the latter scheme, the pure child-custody scheme does not require a preliminary finding of neglect. Further, the pure child-custody scheme is based on a lesser standard of proof than is the neglected-child scheme: the broader preponderance-of-evidence standard as opposed to the stricter clear-and-convincing-evidence standard. See Kurtz Giannelli, Ohio Juvenile Law (2000), 351-53, Section 27.14. In other words, the clear-and-convincing-evidence standard necessarily entails the preponderance-of-the-evidence standard. SeeIngram, 82 Ohio App.3d at 341, 612 N.E.2d at 454.