[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 533.]

THE STATE EX REL. PORTAGE LAKES EDUCATION ASSOCIATION, OEA/NEA, ET
AL. *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL.

[Cite as *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp.
Relations Bd.*, 2002-Ohio-2839.]

*Mandamus sought to compel State Employment Relations Board to vacate its
dismissals of three cases alleging unfair labor practices by Portage Lakes
Career Center Board of Education, find that there is probable cause to
believe that the board committed the alleged unfair labor practices, issue
complaints on those charges, and set the cases for hearing—Writ denied
when relators have not satisfied their burden of proving that SERB acted
in an unreasonable, arbitrary, or unconscionable manner in dismissing
the cases.*

(No. 2001-1691—Submitted March 26, 2002—Decided June 26, 2002.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶1} Relator Portage Lakes Education Association, OEA/NEA ("PLEA")
is the exclusive bargaining representative of a unit of teachers and support
employees of intervening respondent, Portage Lakes Career Center Board of
Education, who are employed at Portage Lakes Career Center ("PLCC"). PLCC is
a joint vocational school district located in Summit County, Ohio. Relator Amy
Zenner is a former PLCC teacher who had been assigned duties as a vocational and
special education ("VOSE") coordinator. Relator Larry Starcher is a former PLCC
teacher who had been assigned duties as an automotive instructor. Relator Robert
Hill is a classified employee of PLCC who performs custodial and maintenance
duties.

{¶2} On September 27, 2000, PLEA filed unfair labor practice charges in three separate cases on behalf of Zenner, Starcher, and Hill, with respondent State Employment Relations Board ("SERB") against the board of education and PLCC Superintendent Mark Lukens. The facts surrounding these three SERB cases are as follows.

SERB Case No. 00-ULP-09-0579: Zenner

{¶3} In 1980, the board of education created the position of VOSE coordinator at PLCC. The board of education hired Delores Dixon-Kayuha to be the VOSE coordinator. During her tenure as VOSE coordinator, Dixon-Kayuha performed various duties, which included providing small-group instruction. Dixon-Kayuha retired at the conclusion of the 1997-1998 school year.

{¶4} In 1998, the board of education hired Zenner and Lisa Huey as VOSE coordinators for PLCC. Zenner was hired for the VOSE coordinator position vacated by Dixon-Kayuha, and Huey was hired to fill a second VOSE coordinator position for which the board of education sought, but did not receive, additional funding. The board of education assigned Zenner most of the instructional duties and assigned Huey most of the administrative duties historically associated with the VOSE coordinator position. In August 1998, Zenner filed a grievance protesting the duties assigned to her for the 1998-1999 school year; she claimed that she should have been assigned the administrative duties that had been assigned to Huey. In August 1999, an arbitrator found in favor of Zenner on her grievance and ordered the board of education to assign to her those duties that had been performed by Dixon-Kayuha as VOSE coordinator. As a result of the arbitrator's decision, the board of education assigned more administrative duties to Zenner and more instructional duties to Huey for the 1999-2000 school year.

{¶5} The General Assembly enacted legislation in 1999 that changed the method of funding joint vocational school districts from a "per unit" basis, which provided funding based upon the number of instructors and specific positions,

including VOSE coordinator positions. The new method of an "average daily membership" provides funding based upon the number of students enrolled in the joint vocational school district. Cf. former R.C. 3317.16, 1998 Am.Sub.H.B. No. 650, 147 Ohio Laws, Part III, 5207, and former R.C. 3317.16, 1999 Am.Sub.H.B. No. 282. Due to the funding changes, PLCC did not receive more state funding for the 1999-2000 school year than it received for the 1998-1999 school year under the unit-funding system. Earlier legislation had increased academic requirements for vocational school districts, 1997 Am.Sub.S.B. No. 55, 147 Ohio Laws, Part III, 6542, and forced the board of education to hire additional instructors to teach academic courses beginning with the 2000-2001 school year, 1997 Am.Sub.S.B. No. 55.

{¶6} Because of the changes in state funding and academic requirements, the board of education decided to reorganize the special education program for PLCC. The board of education and PLEA representatives held numerous meetings at which the elimination of certain positions, including the VOSE coordinator positions, was discussed as part of the effort to restructure PLCC's vocational courses to provide a more effective and efficient use of limited state funding. The board of education and PLEA also discussed Zenner's and Huey's failure to renew their VOSE coordinator certification for the 2000-2001 school year.

{¶7} The board of education ultimately notified several employees, including Zenner and Huey, that their limited contracts would not be renewed. In June 2000, the board of education eliminated the VOSE coordinator positions and assigned most of the administrative duties associated with that position to an administrator. The board's decision not to renew the contracts of Zenner and Huey and to abolish the VOSE coordinator positions was based on the loss of unit funding for the VOSE coordinator position, the failure of Zenner and Huey to renew their certification as VOSE coordinators, the reorganization of special education

services, and the inability of the board of education and PLEA to agree on how best to reorganize.

{¶8} In June 2000, the board of education issued one-year limited contracts to Zenner and Huey for newly created special education teacher positions. These positions included many of the same duties that Zenner and Huey had performed during the 1999-2000 school year, except for certain administrative duties, and paid them the same compensation they had received as VOSE coordinators.

{¶9} On June 30, 2000, PLEA filed an unfair labor practice charge with respondent State Employment Relations Board ("SERB"). The matter was designated SERB case No. 00-ULP-06-0388. In the case, PLEA claimed that the board of education had retaliated against it for its successful 1999 arbitration award on behalf of Zenner by reassigning certain VOSE coordinator duties to an administrator for the 1999-2000 school year.

{¶10} In July 2000, Zenner accepted an offer of employment with a different employer and requested that she be released from her one-year limited contract for the 2000-2001 school year with the board of education. The board of education accepted Zenner's resignation on July 20. According to the PLCC superintendent, Zenner's sole stated reason for resigning was her success in obtaining a job closer to her home.

{¶11} On September 27, 2000, PLEA and Zenner filed another unfair labor practice charge with SERB against the board of education, SERB case No. 00-ULP-09-0579. In their charge, PLEA and Zenner claimed that the board of education and the PLCC superintendent had engaged in a pattern of intimidation and coercion that led to Zenner's resignation:

{¶12} "For over one year, Charged Parties Portage Lakes Career Center and Superintendent Mark Lukens have engaged in a pattern of conduct which constitutes continuing violations of Ms. Zenner's rights to engage in protected, concerted activity under Chapter 4117 of the Ohio Revised Code, primarily because

of her victory in an arbitration between Charging Party PLEA and Charged Party Board. This pattern of conduct has led to several charges including charge Nos. 00-02-ULP-0089, 00-05-ULP-0288, and 00-06-ULP-0388.

**{¶13}** "Most recently, since on or about July 5, 2000, Charged Parties Board and Superintendent Lukens have continued their patterns of intimidation and coercion by unilaterally assigning duties of the bargaining unit which Ms. Zenner should have been performing, to an administrator outside the bargaining unit as addressed in case No. 00-06-ULP-0388.

**{¶14}** "Faced with such intimidation and coercion, Ms. Zenner had no reasonable alternative but to resign, so she submitted a resignation which was accepted by Charged Party Board in August 2000. Such action is a constructive dismissal, improperly achieved against Ms. Zenner, in direct retaliation for the exercise of her protected rights."

**{¶15}** On November 27, 2000, SERB found that probable cause existed in case No. 00-ULP-06-0388 to believe that the board of education had violated R.C. 4117.11(A)(1), (3), and (5) by unilaterally assigning some bargaining-unit duties to a non-bargaining-unit employee in retaliation for Zenner winning an arbitration award.

**{¶16}** By memorandum dated December 21, 2000, a SERB labor relations specialist investigated the charge in case No. 00-ULP-09-0579 and determined that Zenner's resignation did not rise to the level of a constructive discharge because nothing was alleged to have happened after Zenner's acceptance of the recall position in June 2000 that would have necessitated her resignation because of intolerable working conditions. The labor relations specialist recommended that the charge in case No. 00-ULP-0579 be dismissed for lack of probable cause to believe that the board of education and the PLCC superintendent had committed an unfair labor practice.

{¶17} SERB acted in accordance with the recommendations. On January 10, 2001, SERB issued a complaint against the board of education in case No. 00-ULP-06-0388. On January 11, 2001, SERB unanimously dismissed the charge in case No. 00-ULP-09-0579 for lack of probable cause because "[i]nformation gathered during the investigation reveals Ms. Zenner's resignation does not rise to the level of a constructive discharge."

SERB Case No. 00-ULP-09-0578: Starcher

{¶18} Relator Larry Starcher was one of two automotive instructors employed at PLCC by the board of education. During the winter of 2000, the board of education settled a grievance filed by Starcher concerning his use of an unrestricted personal day. Starcher also provided affidavits in SERB case Nos. 00-ULP-02-0089 and 00-ULP-05-0288. Most of the union members mentioned in these cases did not file additional charges alleging retaliatory action by the board of education.

{¶19} Because of the legislative changes that prompted the reorganization of the vocational special education program at PLCC, the board of education no longer received funding based on the number of instructors for the automotive program and it needed to hire additional instructors for academic courses. No more than eight students had completed the PLCC automotive program in each school year from 1996-1997 through 1999-2000.

{¶20} In April 2000, Superintendent Lukens recommended that the board of education not renew Starcher's limited teaching contract because of the loss of unit funding for the school district, the need to hire additional staff in other areas, and low student enrollment in the automotive program. Starcher was the less senior of the two automotive instructors. The board of education voted not to renew Starcher's teaching contract, and in June 2000, after conducting a hearing requested by Starcher, the board of education affirmed its previous decision. As part of its reorganization, the board of education reduced the number of teachers in other

PLCC programs, i.e., law enforcement, computerized business technology, health care technician, and "option 4."

{¶21} Following the board's nonrenewal of his teaching contract, Starcher applied for three teaching positions. A bachelor's degree was either a required or a desired qualification for these positions. Starcher, who does not have a bachelor's degree, was not selected for any of the positions for which he applied.

{¶22} On September 27, 2000, in case No. 00-ULP-09-0578, PLEA and Starcher filed an unfair labor practice charge with SERB against the board of education and the PLCC superintendent. They claimed that the board's failure to reemploy Starcher for the 2000-2001 school year constituted retaliation against him for providing affidavits in case Nos. 00-ULP-02-0089 and 00-ULP-05-0288.

{¶23} By a memorandum dated December 21, 2000, a SERB labor relations specialist who had investigated the charge recommended that SERB dismiss the unfair labor practice charge for lack of probable cause. On January 11, 2001, SERB unanimously dismissed the charge because "[i]nformation gathered during the investigation reveals the recall was based upon business needs in accordance with the available openings."

SERB Case No. 00-ULP-09-0577: Hill

{¶24} The board of education employs custodians, maintenance workers, and custodial/maintenance employees at PLCC. Robert Hill is the only custodial/maintenance employee.

{¶25} From November 1997 until the end of the 1999-2000 school year, custodian Luvera Kovach worked the evening shift from 2:30 p.m. to 10:30 p.m. at PLCC. When Superintendent Lukens began his employment as superintendent in 1999, he expressed his concern that there were no maintenance employees present in the PLCC building during the evening hours to handle potential maintenance problems. The PLCC director of building and grounds advised the superintendent that because of Kovach's inability to handle some of the more physically

demanding tasks assigned to custodians on the day shift, Kovach had been assigned to the night shift. During the 1999-2000 school year, with only Kovach working the custodial evening shift at PLCC and no maintenance employees assigned to that shift, the school experienced certain maintenance problems, including power outages and other electrical troubles and overflowing toilets.

{¶26} In April 2000, Kovach retired, and Superintendent Lukens advised a PLEA representative that he intended to reassign Hill to the evening shift. Lukens reasoned that because Hill was the only employee classified as custodial/maintenance, his presence at the PLCC building in the evening would increase efficiency by his ability to address maintenance problems as they arose and by providing him an opportunity to complete maintenance projects that could not be completed during the day shift, when some of the classrooms were occupied by students. After PLEA failed to advise Lukens of any concerns about the proposed reassignment, he reassigned Hill to the night shift in August 2000.

{¶27} Hill had served as support staff representative of PLEA during the 1996-1997 school year and represented the support staff in negotiations that led to the collective bargaining agreement between the board of education and PLEA. A grievance filed by Hill concerning harassing behavior by his immediate supervisor was resolved in the 1997-1998 school year with a promise by the supervisor that it would not happen again. Hill had also complained privately to the superintendent at the beginning of the 1999-2000 school year about problems in the maintenance department, but the superintendent disregarded Hill's allegations.

{¶28} On September 27, 2000, in case No. 00-ULP-09-0577, PLEA and Hill filed an unfair labor practice charge with SERB. They claimed that the board of education and the PLCC superintendent assigned Hill to the night shift despite Hill's status as the most senior bargaining-unit employee in the maintenance department. By memorandum dated December 21, 2000, a SERB labor relations specialist who had investigated the charge concluded that the board of education

8

and the superintendent had a logical business reason for the reassignment and that no connection was made between Hill's concerted protected activities and his reassignment. The investigator recommended that the unfair labor practice charge be dismissed for lack of probable cause. On January 11, 2001, in a unanimous decision, SERB dismissed the unfair labor practice charge for lack of probable cause. SERB concluded that "[i]nformation gathered during the investigation reveals the schedule change was for reasons other than protected activity."

Motion for Reconsideration

{¶29} Following the January 2001 dismissal of the unfair labor practice charges in case Nos. 00-ULP-09-0577, 00-ULP-09-0578, and 00-ULP-09-0579, relators, Zenner, Starcher, Hill, and PLEA, filed a motion with SERB for reconsideration of its decisions unanimously dismissing the charges. Relators cited proceedings in three other unfair labor practice cases before SERB, case Nos. 00-ULP-11-0668, 00-ULP-11-0691, and 01-ULP-01-0032, as new developments that were not before SERB when it dismissed case Nos. 00-ULP-09-0577, 00-ULP-09-0578, and 00-ULP-09-0579. Otherwise, relators' argument consisted mostly of the evidence that SERB had previously considered.

{¶30} In April 2001, a SERB labor-relations specialist reviewed relators' motion and recommended denying it. By opinion dated May 24, 2001, in another unanimous decision, SERB denied relators' motion for reconsideration. SERB concluded that "[a] review of the original investigation reveals that the Charging Party has failed to raise issues warranting reversal of the dismissals."

Mandamus

{¶31} Over three months later, on September 20, 2001, relators, Zenner, Starcher, Hill, and PLEA, filed this action for a writ of mandamus to compel SERB to vacate its dismissals of case Nos. 00-ULP-09-0577 (Hill), 00-ULP-09-0578 (Starcher), and 00-ULP-09-0579 (Zenner), find that there is probable cause to believe that the board of education committed the alleged unfair labor practices, issue complaints on those charges, and set the cases for hearing. SERB filed an answer, and the board of education filed a motion to intervene as a respondent and an answer. We granted the motion to intervene, granted an alternative writ, and issued a schedule for the presentation of evidence and briefs. 93 Ohio St.3d 1486, 758 N.E.2d 186.

*Mandamus: Standard of Review and Probable Cause*

{¶32} Relators assert that SERB erred in dismissing their unfair labor practice charges and that they are entitled to a writ of mandamus to compel SERB to issue complaints and conduct hearings on their charges. Before addressing relators' assertion, we must determine the appropriate standards for reviewing SERB decisions finding no probable cause that unfair labor practice charges have occurred.

{¶33} R.C. 4117.12(B) requires SERB to issue a complaint and conduct a hearing on an unfair labor practice charge if it has probable cause for believing that a violation has occurred:

{¶34} "When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. *If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge.*" (Emphasis added.)

{¶35} Probable-cause determinations by SERB under R.C. 4117.12(B) are not reviewable by direct appeal. *Ohio Assn. of Pub. School Emp., Chapter 643,*

*AFSCME/AFL-CIO v. Dayton City School Dist. Bd. of Edn.* (1991), 59 Ohio St.3d 159, 572 N.E.2d 80, syllabus. Instead, in the absence of an adequate remedy in the ordinary course of law, "[a]n action in mandamus is the appropriate remedy to obtain judicial review of orders by the State Employment Relations Board and dismissing unfair labor practice charges for lack of probable cause." *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 689 N.E.2d 962, syllabus; *State ex rel. Glass, Molders, Pottery, Plastics & Allied Workers Internatl. Union, Local 333, AFL-CIO, CLC v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 157, 159, 609 N.E.2d 1266. Mandamus will issue to correct an abuse of discretion by SERB in dismissing unfair labor practice charges. *State ex rel. Leigh v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 143, 145, 666 N.E.2d 1128. An abuse of discretion means an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 533, 751 N.E.2d 1032.

{¶36} Relators contend that SERB abused its discretion by finding that there was no probable cause to believe that the board of education committed unfair labor practices in the three SERB cases involving Zenner, Starcher, and Hill. In analyzing SERB's probable-cause determination, we must first review the statutory language, reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage. *State ex rel. Painesville v. Lake Cty. Bd. of Commrs.* (2001), 93 Ohio St.3d 566, 569-570, 757 N.E.2d 347.

{¶37} "Probable cause" is not defined in R.C. Chapter 4117, so it must be accorded its ordinary definition. "Probable cause" is normally referred to in the context of the commission of a crime and it is defined as "[a] reasonable ground to suspect that a person has committed or is committing a crime." Black's Law Dictionary (7th Ed.1999) 1219; see, also, Webster's Third New Internatl.Dictionary (1971) 1806, defining "probable cause" as "a reasonable ground for supposing that a criminal charge is well-founded." Similarly, an

appellate court has compared the SERB probable-cause determination to a consideration of whether there is "reasonable cause to believe" that a violation occurred. See *Springfield City School Support Personnel v. State Emp. Relations Bd.* (1992), 84 Ohio App.3d 294, 299, 616 N.E.2d 983.

{¶38} Therefore, after construing R.C. 4117.12(B) in accordance with rules of grammar and common usage, we hold that SERB must issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred.

{¶39} The role of SERB "in this early stage of the proceeding is most closely analogous to that of a public prosecutor investigating a citizen's complaint of criminal activity. In either case, the decision not to prosecute is discretionary, and not generally subject to judicial review." *Ohio Assn. of Pub. School Employees*, 59 Ohio St.3d at 160, 572 N.E.2d 80. The issue of probable cause in criminal proceedings is essentially one of fact. See, e.g., *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 153, 749 N.E.2d 226, 242.

{¶40} The probable-cause determination by SERB is no different. See, generally, Drucker, Collective Bargaining in Ohio (1995) 670, Section 14.20(B) ("In general, the investigators and Board members examine the facts to determine if it is more likely than not that an unfair labor practice has been committed"). "In making its determination, SERB will consider not only the evidence that supports the allegations of the charge but also, of course, any information that may rebut the charge or offer a defense to the violation alleged. Issues such as managerial justification, the absence of protected activity by a charging party, or the failure to show any indication of unlawful motivation may be sufficient to secure dismissal of a case even when the facts alleged in the charge have been verified." Id.

{¶41} Because mandamus proceedings are premised upon the relators' establishing an abuse of discretion by SERB in its probable-cause determination, courts should not substitute their judgment for that of the administrative agency,

i.e., SERB. See, e.g., *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 185, 724 N.E.2d 771, where we held, in a mandamus case in which the relator had to establish that the board of elections abused its discretion, that "[w]e will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue"; cf. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (administrative appeal from SERB decision).

**{¶42}** With the foregoing standards in mind, we now review the three SERB determinations that are the subject of this mandamus case.

SERB Case No. 00-ULP-09-0579: Zenner

**{¶43}** Relators assert that SERB abused its discretion in dismissing case No. 00-ULP-09-0579 for lack of probable cause. Relators claim that Zenner was constructively discharged from her employment at PLCC.

**{¶44}** The elements of a constructive discharge in violation of R.C. 4117.11(A)(1) and (3) are:

**{¶45}** " '(1)  The employer has imposed or knowingly allowed intolerable working conditions;

**{¶46}** " '(2)  The employer's conduct was motivated at least in part by anti-union animus or other intent to discriminate against an employee for exercise of rights guaranteed by O.R.C. Chapter 4117; and

**{¶47}** " '(3)  A reasonable person subjected to such circumstances would have resigned.' " *In re Norwood* (Oct. 7, 1999), SERB No. 99-025, at 3-168, quoting *In re Warren Cty. Sheriff* (Sept. 28, 1988), SERB No.88-014, at 3-78; see, also, *State ex rel. Alben v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 133, 135, 666 N.E.2d 1119, citing *Lorain City School Dist. Bd. of Edn.*, supra, at paragraph two of the syllabus ("due deference must be afforded to SERB's interpretation of R.C. Chapter 4117").

**{¶48}** Based on its investigation, SERB could reasonably conclude that there was no probable cause to believe that the board of education constructively discharged Zenner. The uncontroverted investigative evidence established that Zenner had not renewed her certification to be a VOSE coordinator for the 2000-2001 school year and that legislative changes had ended the method of state funding of specific positions like VOSE coordinator. Given Zenner's failure to renew her VOSE coordinator certification, it is difficult to accept Zenner's contention that she could have continued as VOSE coordinator for PLCC *but for* the actions of the board of education. There is no evidence or allegation that actions of the board of education or the superintendent prevented Zenner from renewing her certification.

**{¶49}** Moreover, as the labor-relations specialist concluded, there is no evidence that anything occurred between June 2000, when Zenner accepted a limited contract for a new teaching position, and July 2000, when she resigned, that would have necessitated her resignation because of intolerable working conditions.

**{¶50}** Relators argue that because SERB found probable cause to issue a complaint in case No. 00-ULP-09-0388, it had exhausted its prosecutorial discretion in case No. 00-ULP-09-0579 and was required to find probable cause and issue a complaint in the latter case. The sole case relators cite for this novel proposition is *Jefferson Technical College Edn. Assn. v. State Emp. Relations Bd.* (Sept. 10, 1992), Jefferson App. No. 91-J-21, 1992 WL 223733.

**{¶51}** *Jefferson Technical*, however, is inapposite. The court of appeals in that case held merely that once SERB finds probable cause exists to believe that an unfair labor practice occurred and issues a complaint, it cannot dismiss the complaint and refer the matter to arbitration under the parties' collective bargaining agreement. See, also, *State Emp. Relations Bd. v. Perkins* (2001), 144 Ohio App.3d 460, 760 N.E.2d 850, holding similarly that SERB is required to issue a complaint and conduct a hearing after it finds probable cause for believing that the charged party committed unfair labor practices and it cannot dismiss charges based on a

subsequent settlement agreement that the employee opposed. Unlike *Jefferson Technical* or *Perkins*, SERB has never found probable cause that the board of education committed unfair labor practices in case No. 00-ULP-09-0579.

{¶52} Further, neither law nor policy supports a holding that a probable-cause determination in one case must result in a probable-cause determination in a related case. A comparable holding would require a dismissal for lack of probable cause in a case when there is a dismissal in another case. Applying the latter rule in this case would then result in dismissal of case No. 00-ULP-09-0579 because one of the cases mentioned in PLEA and Zenner's charge as part of a pattern of conduct is case No. 00-ULP-05-0288, which was dismissed by SERB for lack of probable cause before the dismissals that are the subject of this mandamus case. Neither this rule nor the rule advanced by relators imposes a mandatory duty on SERB to issue or not issue a complaint in a particular case based on their determinations in separate cases.

{¶53} Relators further assert that a consideration of evidence relating to other cases requires a finding of probable cause and the issuance of a complaint in case No. 00-ULP-09-0579. More specifically, relators contend that SERB failed to address their allegation that the board of education and the superintendent had engaged in a pattern of conduct of unfair labor practices. But that allegation was expressly limited to a pattern of conduct restricting *Zenner's* rights, and the charge reflected that the alleged pattern was related to relators' contention that Zenner had been constructively discharged, a claim that was investigated and adequately addressed by SERB and its labor relations specialist. And relators could have raised Zenner's constructive-discharge claim in case No. 00-ULP-06-0388 instead of filing a new charge in case No. 00-ULP-09-0579. See *State Emp. Relations Bd. v. Warren Cty. Sheriff* (1992), 63 Ohio St.3d 69, 584 N.E.2d 1211, syllabus ("Any incidents which occur prior to the issuance of the complaint may be considered by the board in determining whether an unfair labor practice has been committed").

**{¶54}** Nor does the examination of any claimed new evidence warrant a finding that SERB abused its discretion in dismissing case No. 00-ULP-09-0579 for lack of probable cause. We have held that in mandamus actions, a court is not limited to considering facts and circumstances at the time a proceeding is instituted but should consider the facts and conditions at the time it determines whether to issue a peremptory writ. *State ex rel. Wilson v. Sunderland* (2000), 87 Ohio St.3d 548, 549, 721 N.E.2d 1055. In the mandamus cases cited by relators, however, later events either mooted the case or names were subsequently withdrawn from a petition to transfer territory. See, e.g.*, State ex rel. Karam v. Cull* (1942), 139 Ohio St. 415, 22 O.O. 472, 40 N.E.2d 670; *State ex rel. Apple v. Pence* (1941), 137 Ohio St. 569, 19 O.O. 340, 31 N.E.2d 841.

**{¶55}** By contrast, the right to extraordinary relief in mandamus to compel SERB to issue a complaint on unfair labor practice charges is premised upon relators' establishing that SERB abused its discretion at the time it dismissed the charges. It is axiomatic that SERB could not abuse its discretion based on evidence that was not properly before the board when it made its decision. Consequently, the review of a SERB decision is generally limited to the facts as they existed at the time SERB made its decision. See, e.g.*, E. Palestine City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (Dec. 15, 1987), Columbiana App. No. 87-C-6, 1987 WL 29612 ("When the Common Pleas Judge came on to consider for final disposition the appeal involved, it was up to him to consider only the facts as they existed at the time the Board issued its order"); Drucker, Collective Bargaining Law in Ohio, supra, at 696, Section 14.34(D).

**{¶56}** Finally, even if the additional evidence introduced by relators is considered, it does not establish an abuse of discretion by SERB. In fact, one of the postdecision evidentiary items introduced with relators' evidence is the July 2001 SERB decision in case No. 00-ULP-06-0388, in which SERB concluded that the board of education *did not retaliate against Zenner by not renewing her limited*

16

*contract.  In re Portage Lakes Career Ctr. Bd. of Edn.* (July 6, 2001), SERB No. HO 2001-ALJ-004, at 2-23.

{¶57} Therefore, SERB did not abuse its discretion in dismissing PLEA and Zenner's unfair labor practice charges in case No. 00-ULP-09-0579.

SERB Case No. 00-ULP-09-0578:  Starcher

{¶58} Relators contend that SERB abused its discretion in dismissing case No. 00-ULP-09-0578 for lack of probable cause.  They claim that the board's justification  for not renewing Starcher's contract and failing to reemploy him in another position must be considered pretextual and that SERB failed to address Starcher's allegation that a coworker named Don Ellesin, who was not a union supporter, was preselected to fill an unposted, new teaching position.

{¶59} As noted previously, evidence regarding managerial justification can be sufficient to warrant the dismissal of a case even when facts alleged in an unfair labor practice charge are verified.  Drucker, Collective Bargaining in Ohio, supra, at 670, Section 14.20(B).  Based on the evidence before it, SERB could reasonably determine that there was no probable cause to believe that the board of education's failure to reemploy Starcher for the 2000-2001 school year constituted prohibited retaliation against him for providing affidavits in other unfair labor practice cases.

{¶60} The decision not to renew Starcher's limited contract as an automotive instructor was based upon the loss of unit funding for the school district, the need to hire additional teachers for academic courses, and low student enrollment in the automotive program.  The board of education reduced the number of teachers in additional PLCC programs, and other PLEA members who testified in the unfair labor practice cases did not subsequently allege retaliatory conduct by the board.  And the board of education's decision not to employ Starcher for any of the three teaching vacancies for which he later applied was justified because Starcher did not have the required or desired bachelor's degree for those positions.

**{¶61}** Further, Starcher raised the same allegations regarding Ellesin in case No. 00-ULP-02-0089, and SERB dismissed that case for lack of probable cause.

**{¶62}** Consequently, SERB did not abuse its discretion in dismissing case No. 00-ULP-09-0578 for lack of probable cause.

SERB Case No. 00-ULP-09-0577: Hill

**{¶63}** Relators finally contend that SERB abused its discretion in dismissing case No. 00-ULP-09-0577 for lack of probable cause. They assert that the board of education and the superintendent committed an unfair labor practice by assigning Hill to the night shift.

**{¶64}** Relators' contention is meritless. The decision by SERB was reasonable and within its discretionary authority. Evidence was introduced during the investigation that the superintendent's assignment of Hill to the night shift was based on business needs. Hill was the only custodial/maintenance employee, and his presence at PLCC in the evening increases the ability of the board of education to address maintenance problems when they arise. Additionally, there is no collective bargaining provision conferring a preference in assignments on the most senior bargaining-unit employee in the maintenance department or any evidence establishing a historical practice of such preference.

**{¶65}** SERB did not abuse its discretion in dismissing case No. 00-ULP-09-0577 for lack of probable cause.

Motion for Reconsideration

**{¶66}** Nor did SERB abuse its discretion in denying relators' motion for reconsideration. Relators' motion was an amalgamation of evidence that had already been considered by SERB and other unfair labor practice cases that did not warrant a modification of its previous decisions to dismiss case Nos. 00-ULP-09-0577, 00-ULP-09-0578, and 00-ULP-09-0579 for lack of probable cause.

Conclusion

**{¶67}** Based on the foregoing, relators have not satisfied their burden of proving that SERB acted in an unreasonable, arbitrary, or unconscionable manner in dismissing case Nos. 00-ULP-09-0577, 00-ULP-09-0578, and 00-ULP-09-0579. We will not substitute our judgment for that of SERB because the record contains evidentiary support for its dismissals.

**{¶68}** In that regard, this case is distinguishable from *Serv. Emp. Internatl. Union*, 81 Ohio St.3d 173, 689 N.E.2d 962, a case not cited by relators, in which we granted a writ of mandamus to compel SERB to issue a complaint and conduct a hearing on an unfair labor practice charge. In *Serv. Emp. Internatl. Union*, the SERB labor relations specialist who conducted the investigation concluded that there was probable cause to believe that an unfair labor practice charge had occurred and recommended the issuance of a complaint, SERB split two to one in rejecting its investigator's recommendation, and two internal documents of the charged party and deposition testimony of the general counsel of the charged party established probable cause. Conversely, here SERB unanimously accepted the recommendations of its labor relations specialist to dismiss the charges, and there are no internal documents or testimonial admissions of the board of education that establish that the only reasonable decision by SERB would be findings of probable cause and the issuance of complaints.

**{¶69}** A contrary holding, e.g., adopting a more liberal standard to find probable cause after construing the evidence most strongly in favor of the charging parties, would result in de novo mandamus determinations in these cases, a result that is supported by neither law nor precedent. We have not used mandamus in this fashion to second-guess probable cause determinations by prosecutors in criminal matters, see *State ex rel. Evans v. Columbus Dept. of Law* (1998), 83 Ohio St.3d 174, 699 N.E.2d 60, and *State ex rel. Murr v. Meyer* (1987), 34 Ohio St.3d 46, 516 N.E.2d 234, and we will not permit comparable expanded judicial review of probable cause determinations by administrative agencies like SERB.

19

**{¶70}** Therefore, given the failure of relators to establish that SERB abused its discretion in dismissing the unfair labor practice charges, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., concur in judgment.

––––––––––––––––––––

Macala, Baasten, McKinley, Piatt & Gore, L.L.C., and Salvatore J. Falletta, for relators.

Betty D. Montgomery, Attorney General, and Peter M. Thomas, Assistant Attorney General, for respondent.

Whalen & Compton Co., L.P.A., G. Frederick Compton, Jr., and Mari Alice Zacharyasz, for intervening respondent.

––––––––––––––––––––