JOURNAL ENTRY AND OPINION
{¶ 1} The relator, Barbara Hall, commenced this mandamus action against the State Employment Relations Board (hereinafter "SERB") for two claims. In the first claim, she seeks to compel SERB to vacate the dismissal of her unfair labor practice charge and find that there was probable cause that her union, Ohio Council 8, American Federation of State, County and Municipal Employees, Local 1746, AFL-CIO (hereinafter, unless otherwise specified, the "Union"), engaged in an unfair labor practice. Hall asserts that her Union mishandled her discharge grievance against the Cuyahoga County Department of Children and Family Services (hereinafter the "County"). To grant that relief, this court must find that SERB abused its discretion in ruling that there was no probable cause for an unfair labor practice charge. Hall's second claim is a public records action to compel SERB to produce its investigatory file. *Page 3 
 {¶ 2} On April 9, 2008, this court ordered SERB to submit to this court, a copy of its investigatory file in the subject case, 07-ULP-07-0367, which it had released to Hall. The order further provided that if SERB had made any redactions in releasing the records to Hall, then it should submit redacted and unredacted copies to this court under seal. This court also ordered the parties to submit cross-motions for summary judgment and reply briefs on both claims.
 {¶ 3} On April 21, 2008, SERB submitted a copy of its investigatory file which it had released to Hall; SERB asserted no redactions.[1] On May 12, 2008, Hall filed her motion for summary judgment but argued only her first claim. On May 19, 2008, SERB filed its motion for summary judgment on both claims. It noted that it had not released its investigatory file to Hall, because she had not requested it. When she sought it through this mandamus action, SERB released it in toto. By June 2, 2008, both parties had filed their summary judgment reply briefs. Hall admitted in her reply brief that her public records claim had been rendered moot. Accordingly, this matter is ripe for adjudication on Hall's first claim, and her second claim for public records is denied as moot.
 FACTUAL AND PROCEDURAL BACKGROUND The Collective Bargaining Agreement {¶ 4} It is undisputed that at all relevant times Hall was a Union member, the Union was the official bargaining representative, and a collective bargaining *Page 4 
agreement existed between the Union and the County. Article 10 of the agreement governed discipline. Section 5 provided: "It is important that the employee complaints regarding unjust or discriminatory *** discharge be handled promptly. Therefore, all such disciplinary action may be reviewed through the Grievance Procedure, beginning at Step 3." (Pg. 19.)[2] Article 11 provided the Grievance Procedure.[3] In Step 3, the grievance "must be received in writing by the Administrator of the County Division of Labor Relations of the Department of Human Resources and/or his designee from the Union President *** within seven (7) working days after the receipt of the Step 2 answer. The Administrator *** shall consider the grievance at the monthly Step 3 Grievance meeting to be held on the second Thursday of each month. *** Within twenty (20) working days after the Step 3 meeting, the Administrator *** shall give a written answer to the Union President." (Pg. 21.)
 {¶ 5} Step 4, Mediation, allowed the parties to seek mediation once the grievance had been appealed to arbitration. Either party could decide not to mediate. Step 5, Arbitration, provided in pertinent part as follows: "If the grievance is not satisfactorily settled at Step 3, the Union may, within thirty (30) days after the *Page 5 
receipt of the Step 3 answer, submit the issue to arbitration. The Union shall notify the Federal Mediation and Conciliation Service *** and the other party of its intent to arbitrate. *** The parties agree grievances that involve removal, suspension of five (5) days or more *** shall be arbitrated on an expedited basis at the discretion of the Union." (Pg. 23.)
 Hall's Discharge and Grievance {¶ 6} On January 8, 2004, Hall, then a Social Service Worker 3, was working the 696-KIDS Hotline, when she received a call from a Metro Health employee.[4] The caller related that the aunt of a two-year-old boy had called Metro Health and stated that she thought her nephew had been sexually and physically abused. The nephew had told the aunt that his "bottom" was hurting and said that his mother's boyfriend had touched him there. The aunt further related that when she saw the boy a couple of weeks earlier he was bruised all over his body. Hall obtained some identifying information including the child's address, and when she asked for the mother's name, the caller said, "Hold on a second I can look that up." At this point, there was a seventeen-second pause in the conversation, and then the caller provided the mother's name. Hall said that she would document this call as a non-referral, meaning that it did not warrant investigation by the County. The call then ended. *Page 6 
 {¶ 7} On January 26, 2004, Metro Health admitted the child who was suffering from shaken baby syndrome.[5] On January 30, 2004, the County took custody of him.
 {¶ 8} In early March, the County suspended Hall. She maintains that she asked the Union to grieve her suspension.[6] There is no evidence in the file that the Union filed a grievance for this suspension. However, on April 13, 2004, the County clarified the suspension by stating that it had placed Hall on administrative leave with pay retroactively.[7] Thus, there was no harm to Hall at that time.
 {¶ 9} Also, the County held a pre-disciplinary hearing on March 11, 2004. The County found that Hall did not enter the allegation of sexual abuse and the mother's name within the narrative section of the hotline referral form, although she entered that information on other computer screens. Hall acknowledged that she had received the County policy on hotline procedures and that she had been instructed on the use of the Structure Decision Making Tree, which helps determine whether a referral should be accepted for investigation and what priority it should *Page 7 
have. The County further found that she did not use the tool when evaluating this call.
 {¶ 10} In response, at the pre-disciplinary hearing, Hall asserted that during the seventeen-second pause in the conversation, she communicated the essential information to her supervisor who instructed her to document the call as a non-referral, meaning no investigation was necessary. Hall further stated that this went against her common sense, but that her supervisor had threatened her with insubordination if Hall questioned the supervisor's judgment. Hall further stated that it was standard practice for social workers to seek advice from their supervisor during hotline calls.[8] When confronted with the supervisor's denial of this version, Hall replied that she was disappointed with the supervisor's dishonesty.[9]
 {¶ 11} On May 19, 2004, the County terminated Hall. In the Order of Removal the County cited the failure to enter the allegations of sexual and physical abuse into the narrative section and the failure to use the Structured Decision Making Tree in accordance with the County's policies and procedures. The information obtained in the phone call should have resulted in the case being assigned for investigation. *Page 8 
Moreover, the child suffered shaken baby syndrome later that month. The County found Hall's assertions of the supervisor's dishonesty as unpersuasive.
 {¶ 12} Hall then asked the Union to grieve her termination. Among the documents the Union submitted to SERB is a May 21, 2004 Union Grievance Form for Barbara Hall because "she was unjustly terminated." (Pg. 61.) The Local Union President signed for herself and for Barbara Hall.[10]
The Local Union President further set this grievance for a Step 3 hearing, pursuant to the collective bargaining agreement, for the monthly June 10, 2004 meeting. On May 25, 2004, the Local Union President requested certain records from the County for the hearing, including the supervisor's discipline file and resignation letter.
 {¶ 13} The SERB record does not fully establish what happened at the June 10, 2004 hearing. At the end of the hearing, the Local Union President asked that the hearing be put on hold because she had not received the requested information and, in part, because the County had not finished its investigation of the alleged child abuse of the two-year-old boy. After the June 10 hearing, the Local Union President asked for more information, including the County's report on the child and the supervisor's approvals for January and February 2004. At the end of June, the County stated that it would not release its investigation records relating to the child. Also in a July 12, 2004 letter from the County on Step 3 grievances, the County noted the following for Hall's grievance: "The Union has requested that this *Page 9 
grievance be placed on hold pending submission of additional documentation." (Pg. 68.) Nevertheless, on August 11, 2004, the Local Union President met with the County investigator and the County Labor Relations Administrator. Although the investigator did not release his file, he did state that he had substantiated the allegations of physical abuse. The Local Union President then stated that she now had all of the information and that the County should answer the grievance. (Pg. 70-71 and 76.)
 {¶ 14} The Local Union President also stated that she called Hall and discussed the case. She told Hall that this was a serious case because of the shaken baby syndrome and would not be successful at arbitration.
 {¶ 15} Hall, however, states that she never received proper documentation of her grievance, including a copy of the grievance form itself, despite her repeated requests. The only record she received was a letter from the Union, not on Union stationary, asking for further information from the County.[11] (Pg. 65.) Whenever she asked the Local Union President about the status of the grievance, the President would tell her to be patient and remind her of other employees for whom it took years to get their jobs back. Hall saw this pattern of evasion as evidence that the grievance was never filed and pursued and that the Union had "written her off" and was hoping she would just go away. *Page 10 
 {¶ 16} In her statement to SERB, the Local Union President stated that in January 2005, she discussed Hall's grievance with the County Human Resource Director who said that a response would be forthcoming and that it would probably be denied. Consequently, the Local Union President believed that the County had denied Hall's grievance in writing, and she forwarded the material to the Union Regional Office for review to determine whether the matter should be arbitrated. In December 2005, the Regional Office asked the Local Union President about the status of Hall's grievance. When the President replied that the Regional Office had the file, the Regional Office replied that it did not. At that point, the Local Union President realized that the County had never issued its written Step 3 response. (Pg. 77.)
 {¶ 17} On December 20, 2006, the County denied in writing the Step 3 grievance. On January 8, 2007, the Union sent the County a written intent to arbitrate the grievance. Although this letter was within the required 30-day deadline, there is no evidence that a similar letter was sent to the Federal Mediation and Conciliation Service. In April 2007, the Union informed Hall that, upon review of the matter, her grievance did not have sufficient merit to warrant arbitration and consequently, it was withdrawing the grievance.
 The Unfair Labor Practice Charge *Page 11 {¶ 18} On July 25, 2007, Hall filed an unfair labor practice charge against the Union with SERB.[12] Pursuant to its procedure, SERB assigned this matter to a labor relations specialist to determine if there was probable cause for a full investigation and hearing on the unfair labor practice charge. The specialist requested that Hall's attorney provide: (1) the effective dates of the collective bargaining agreement; (2) a specific explanation, with supporting documents, indicating how the Union's conduct violates R.C. 4117.11; (3) complete details regarding the harm to Hall; and (4) whether there have been any employees who should have received the same type of treatment for the same reasons and in the same manner. The specialist asked the Union to provide the following: (1) the effective dates of the collective bargaining agreement; (2) a statement with supporting documentation on whether the alleged acts occurred and whether those acts violate R.C. 4117.11; (3) any witness statements in support of its position; (4) identify any related action, such as a court case or mediation; and (5) any information supporting any jurisdictional or procedural defense.
 {¶ 19} In response Hall's attorney sent a letter answering the questions posed and indicating that he had already sent all the documents in his possession with the initial charge. The Union sent its investigatory file, including narrative statements from the Union's attorney and the Local Union President, the phone call transcript, *Page 12 
the May 21, 2004 grievance form, the President's notes from the August 11, 2004 meeting, letters sent from the Union to the County requesting information, and the County's December 2006 letter denying the grievance.
 {¶ 20} In September 2007, the specialist recommended that SERB dismiss the unfair labor practice charge for lack of probable cause. In her findings, the specialist concluded that Hall charged the Union with failing to represent her fairly by not giving her copies of her grievance and by not taking the necessary and appropriate timely steps to pursue her rights, i.e., the Union ignored rudimentary efforts to represent aggrieved members. The specialist further found that any delay by the Union was due to an honest mistake and that Hall failed to "provide any information to show that AFSCME's actions were arbitrary, discriminatory or in bad faith." (Investigator's Memorandum, Pg. 4.) In her "Discussion" section, the specialist cited SERB precedent which held that there must be a showing of arbitrariness, discrimination, or bad faith to establish an unfair labor practice for failure of fair representation. If the charging party can show that the union failed to take a basic and required step without justification, then there is an unrebutted presumption of arbitrariness; however, simple negligence provides an adequate excuse. The specialist concluded by stating: "Based on the merits of the Charging Party's grievance, it appears AFSCME acted reasonably when it determined not to proceed any further on the grievance. The investigation does not show that AFSCME's actions were arbitrary, discriminatory, or in bad faith." (Pg. 5.) In late October 2007, SERB dismissed Hall's unfair labor practice charge with prejudice for failure to show probable cause. *Page 13 
SERB adopted verbatim the specialist's conclusion that the Union had acted reasonably when it decided not to proceed on the grievance.
 DISCUSSION OF LAW {¶ 21} The Supreme Court of Ohio has established the rules and principles for reviewing SERB's probable cause decisions. State ex rel.Portage Lakes Edn. Assn. v. State Emp. Relations Bd., 95 Ohio St.3d 533,2002-Ohio-2839, 769 N.E.2d 853. R.C. 4117.12(B) provides: "When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge." Thus, SERB must find probable cause for an unfair labor practice charge before it conducts a full hearing, including the right to some discovery. The Supreme Court of Ohio has defined "probable cause" in this context as a reasonable ground to suspect or believe that an unfair labor practice has occurred. The Court likened this determination to finding probable cause in the criminal context. Alternatively, the Court stated that a probable cause determination examines whether "it is more likely than not that an unfair labor practice has occurred." Portage Lakes at ¶ 40. Indeed, SERB, after it has conducted an initial investigation, has the duty to issue a complaint and conduct a hearing on an unfair labor practice charge upon the finding of probable cause. Portage Lakes at ¶ 37-39.
 {¶ 22} However, these probable cause determinations are not reviewable by direct appeal. Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME,AFL-CIO v. *Page 14 Dayton City School Dist. Bd. of Edn. (1991), 59 Ohio St.3d 159,572 N.E.2d 80. Thus, "in the absence of an adequate remedy in the ordinary course of the law, `[a]n action in mandamus is the appropriate remedy to obtain judicial review of orders by the State Employment Relations Board and dismissing unfair labor practice charges for lack of probable cause.' State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. StateEmp. Relations Bd. (1998), 81 Ohio St.3d 173, 689 N.E.2d 962, syllabus;State ex rel. Glass, Molders, Pottery, Plastics Allied WorkersInternatl. Union, Local 333, AFL-CIO, CLC, v. State Emp. RelationsBd. (1993), 66 Ohio St. 3d 157, 159, 609 N.E.2d 1266." PortageLakes at ¶ 35. Mandamus will issue to correct SERB's abuse of discretion in dismissing an unfair labor practice charge. An abuse of discretion is an unreasonable, arbitrary, or unconscionable decision. Id. In determining whether SERB abused its discretion, the court should not substitute its judgment for that of the administrative agency and should give deference to its findings and interpretations of R.C. Chapter 4117.Portage Lakes at ¶ 41 and 47. The relator has the burden of establishing the abuse of discretion. Moreover, the Supreme Court of Ohio inPortage Lakes also stated that in examining the discretion of SERB, the court should generally consider the record as it was before SERB, and that it should not examine the record in the light most favorable to the relator.
 {¶ 23} Thus, the issue before this court is whether SERB abused its discretion in determining there was no probable cause that the Union engaged in an unfair labor practice by failing to represent Hall in her grievance. SERB precedents serve as a benchmark for determining probable cause. In In the Matter of State Emp. *Page 15 Relations Bd. v. Ohio Civil Serv. Emp. Assn., AFSCME Local 11,AFL-CIO, SERB 2007-004, Case No. 2005-ULP-05-0296, SERB stated the relevant principles: "When an unfair labor practice is charged because a union has allegedly violated its duty of fair representation, SERB will look to see if the union's actions are arbitrary, discriminatory, or in bad faith. If any of these components are found, there is a breach of the duty.[13] The complainant has the burden of proving that the union did not fairly represent its bargaining-unit members. ***(Citation omitted.) Where the failure to process a grievance was not based on a decision that the grievance lacked merit, but instead results from bad faith, discriminatory conduct or arbitrary behavior, a violation will be found regardless of the merit of the grievance. *** (Citation omitted). A union acts arbitrarily by failing to take a basic and required step. *** Failure to take a basic and required step while performing a representation function creates a rebuttable presumption of arbitrariness. Once that burden has been met, the Union must come forth with its justification or viable excuse for its actions or inactions." See, also, In the Matter of State Emp. Relations Bd. v. Ohio Civil Serv.Emp. Assn., AFSCME, Local 11, AFL-CIO, SERB 99-009, Case No. 97-ULP-09-0501.
 {¶ 24} Furthermore, negligence does not provide an excuse. "SERB explained that it has adopted the analysis of the United States Sixth Circuit Court of Appeals in order to determine whether or not conduct is arbitrary. In Vencl v. Internatl. Union of *Page 16 Operating Engineers (1988), 137 F.3d 420,426, the court held that: `absent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation.'" District 1199, The Health Care Social ServiceUnion, SEIU, AFL-CIO, v. State Emp. Relations Bd., Franklin Cty. App. No. 02AP-391, 2003-Ohio-3436, at ¶ 38.
 {¶ 25} In the present case, this court notes that the Union failed to take a basic and required step in filing for Step 5 Arbitration. There is no evidence in the record that the Union notified the Federal Mediation and Conciliation Service as required by the collective bargaining agreement. Moreover, there is no indication that the labor relations specialist noted this or that the Union endeavored to explain the failure to fulfill the required process.
 {¶ 26} It is also evident that the Union, especially the Local Union President, lost track of the grievance for almost a full year, from at least January 2005, when she discussed the grievance with the County Human Resource Director who orally indicated that the County would deny the grievance, until December 2005 when she realized the County had not given a written response. This failure prevented the Union from fulfilling its duty of handling suspensions and discharges promptly. It also prevented the Union from acting as a catalyst to the County to give written response to the Step 3 grievance. These failures to take a required step and to ensure that a required step was taken indicate that it is more likely than not that the Union did not fairly represent Hall in her grievance. Cf. SERB Case No. 97-ULP-09-0501 *Page 17 
in which a union steward's allowing a grievance to "fall through the cracks" was at least partially the basis for finding that a union had engaged in an unfair labor practice in representing a union member in a grievance.
 {¶ 27} Furthermore, the labor relations specialist excused the Union's failure to pursue the grievance during 2005, as simple negligence. This standard is inconsistent with the pronouncements of the courts inVencl and District 1199 that "a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation." District 1199 at ¶ 38.
 {¶ 28} Moreover, the labor relations specialist in her final analysis did not rest upon the Union's actions or inactions in handling the grievance, but instead examined the merits of the grievance. She concluded that based on the merits the Union acted reasonably when it decided not to pursue the grievance to actual arbitration. However, Hall proffered three affidavits from her co-workers in her motion for summary judgment. The affidavit of Patricia Howard supports Hall's position on the merits of her grievance, that the Structured Decision Tree was not used for non-referrals in January 2004, and that hotline staff members were required to consult with their supervisor regarding each call. All three affiants said they supported Hall during the grievance procedure and made inquiries about the status of her grievance. They also opined that, based on their experience, the Union did *Page 18 
not fairly represent her. Thus, there is reason to believe that these affiants would have provided their affidavits during the probable cause hearing, if invited to do so.[14]
 {¶ 29} Admittedly, this court should base its decision upon the evidence before SERB when it made its probable cause decision. However, it is disturbing that the labor relations specialist explicitly asked the Union for witness statements, but did not extend that invitation to Hall. It is further troubling that the specialist based her decision on the merits of the grievance without giving each side the same opportunity to present its case. This seems unreasonable.
 {¶ 30} Accordingly, because the Union failed to take the basic and required step of notifying the Federal Mediation and Conciliation Service, because it lost track of the status of the grievance during 2005 and did not promptly pursue it, because the labor relations specialist excused the Union's actions based on a standard inconsistent with court rulings, and because the labor relations specialist did not provide each party an equal opportunity to present its case, this court concludes that SERB abused its discretion in ruling that there was no probable cause that the Union engaged in an unfair labor practice. Thus, this court grants the writ of mandamus on the first claim and orders SERB to vacate its decision in In the Matter of Barbara Hall v. OhioCouncil 8, Am. Fedn. of State, Cty. and Mun. Emp., Local 1746,AFL-CIO, Case No. 07-ULP-07-0367, to find that there was probable cause, and to hold a hearing on the merits. This court denies Hall's public records mandamus action. *Page 19 
Respondent to pay costs. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ. R. 58(B).
COLLEEN CONWAY COONEY, P.J., and ANN DYKE, J., CONCUR
[1] The transcript has some redactions of identifying information of a child abuse victim; those may have been made before the transcript reached SERB.
[2] Hall attached as Exhibit A to her motion for summary judgment, SERB's investigatory file and numbered each page. Unless otherwise specified, page number references will be to this exhibit.
[3] Steps 1 and 2 provided for the grievance to be submitted in writing first to the Human Resource Manager and then to the Director of the appropriate department with meetings between the necessary parties, and the County replying in writing within specified time frames.
[4] A transcript of this call is in the SERB investigatory file. (Pg. 42-44.)
[5] His specific injuries were a left arm fracture, retinal hemorrhages, and left subdural hematoma.
[6] In her written statement to SERB, the Local Union President stated that Hall discussed with her the County's investigation, but Hall did not ask her to grieve "being placed on administrative leave." (Pg. 76.)
[7] The Local Union President in her statement to SERB said that it was the County policy to place the employee on administrative leave while it investigated charges like these.
[8] The County noted that it is "not unusual for staff to seek the assistance of management when the situation lacks clarity. It is not policy or procedure for hotline social workers to review the details of every call with management before the case is processed." County's April 8, 2004 Report of Pre-Disciplinary Conference. (Pg. 46.)
[9] In her reply brief, Hall asserted that she had always maintained that the audio tape of the call was shortened and "doctored." Hall had also asserted that in January 2004, the Structured Decision Making Tree needed to be used only after the call had been accepted as a referral, meaning that further investigation was warranted.
[10] Hall maintains that the grievant must personally sign the form.
[11] The Local Union President denies this and said that she gave Hall a copy of the grievance around June 10, 2004, when Hall stopped by the Union office.
[12] Hall attached to the charge as exhibits, her affidavit, an additional fact statement, a copy of the only letter she says she received from the Union, a copy of the Union's 2007 letter deciding not to arbitrate, and several pages of the collective bargaining agreement showing the relevant portions of Articles 10 and 11.
[13] All the parties agree that neither bad faith nor discrimination apply.
[14] Hall's lawyer also confirms this in his reply brief.
 *Page 1